NEW YORK STATE BANKERS ASSOCIATION by KENNETH E. BUHR-MASTER, as President, et al., Plaintiffs, v. HARRY W. ALBRIGHT, JR., as Superintendent of Banks, et al., Defendants.

Fourth Department, December 12, 1974.

*Hodgson, Russ, Andrews, Woods & Goodyear (Stephen H. Kelly* of counsel), for plaintiffs.

*Louis J. Lefkowitz, Attorney-General (Grace K. Banoff* and *Ruth Kessler Toch* of counsel), for Superintendent of Banks, defendant.

*Hughes, Hubbard & Reed (Martin E. Lowy* of counsel), for defendants.

MAHONEY, J. In this action, brought by way of submission pursuant to CPLR 3222, the parties seek determination of: (1) the legality of New York State savings banks' offer to their depositors of account facilities comparable to a checking account as is offered by New York State commercial banks and (2) the

authority of the defendant, Superintendent of Banks, for the promulgation of regulations concerning such accounts. Joined as plaintiffs herein are the New York State Bankers Association (Association), Evans National Bank of Angola, Bank of Akron and Alden State Bank (collectively Commercial Banks), and defendants Harry W. Albright, Jr., as Superintendent of Banks of the State of New York (Superintendent), Erie County Savings Bank and Buffalo Savings Bank (collectively Savings Banks).

Plaintiff Association is an unincorporated association comprised of 268 member commercial banks conducting commercial banking business in this State. Plaintiff Commercial Banks, with the exception of Evans National Bank of Angola which is authorized and existing under the laws of the United States, are banking corporations organized under New York State law, conducting the business of commercial banking in the County of Erie.

Defendant Superintendent, at all times herein material, was and is the duly appointed acting Superintendent of Banks of the State of New York, and defendant Savings Banks are mutual savings banks existing under the Banking Law of the State of New York and conducting business in the County of Erie.

Plaintiff Commercial Banks and member banks of plaintiff Association, concededly, are authorized to and do provide demand deposit service to their customers by means of checking accounts upon which a depositor may draw checks payable to third parties.

In May, 1974 defendant Savings Banks, through various news media, announced their intention to offer a service form of account whereby depositors could pay third parties in the same manner that checks drawn on commercial bank demand deposit accounts are used to pay third parties. Such new accounts are referred to as " NOW " accounts (i.e., Negotiable Order of Withdrawal). Thereafter, defendant Superintendent announced the promulgation of various regulations (3 NYCRR Part 301), effective immediately, governing the offering by savings institutions of such " NOW " accounts. The operational procedure for " NOW " accounts involves the establishment by depositor of a noninterest bearing account in connection with which no passbook is issued. Withdrawals from such account are made by a negotiable order of withdrawal drawn by the depositor, payable and delivered to a third party. The third-party payee deposits such order with his bank, which bank in turn presents it to designated commercial banks through the Buffalo Clearing

House banking facilities. The respective designated commercial bank thereupon presents the payment order to the respective savings bank, debiting the savings bank's Clearing House account. Upon receipt of such order, the savings bank withdraws funds in accordance with the order from the depositor's established "NOW" account. Monthly statements of account are furnished by the defendant Savings Banks to their depositors utilizing such "NOW" accounts. It is significant that such "NOW" accounts are subject to the statutorily imposed 60-day notice of withdrawal (Banking Law, § 238, subd. 2).

The legality of such accounts and the authority of defendant Superintendent to promulgate regulations in connection therewith are the subjects of the instant litigation. Plaintiffs bring this action for a judicial declaration that defendant Savings Banks are without authority to offer and provide such accounts, and plaintiffs seek injunctive relief and a declaration that defendant Superintendent's regulations in connection with such "NOW" accounts are null and void as being in excess of his statutory authority.

Preliminarily, defendants' attack upon the standing of the respective plaintiffs to maintain this action has been considered and, under the facts here submitted, determined to be without merit, for the " ' interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute '. (*Data Processing Serv.* v. *Camp*, 397 U. S. 150, 153, *supra*.) " (*Columbia Gas of N. Y.* v. *New York State Elec. & Gas Corp.*, 28 N Y 2d 117, 123; see, also, *National Organization for Women* v. *State Div. of Human Rights*, 34 N Y 2d 416.)

Addressing attention, therefore, to the merits of the instant case, the main thrust of plaintiffs' argument is that, in view of the historical purpose of, and functional distinctions between, savings banks and commercial banks in the State of New York, absent clear legislative expression of change, assumption of authority for the maintenance and offer of "NOW" accounts by savings bank institutions of this State is foreclosed. Buttressing such contention, plaintiffs cite the evolutionary statutory enactments pertaining to commercial banks vis-à-vis savings banks (L. 1819, ch. 62; L. 1892, ch. 689; L. 1909, ch. 10; L. 1914, ch. 369), evidencing the functional distinctions and purposes of savings institutions, defined as early as 1880 in *Hun* v. *Cary* (82 N. Y. 65, 78) as follows: "Savings banks are not organized as business enterprises. They have no stockholders, and are not to engage in speculations or money-making in a business

sense. They are simply to take the deposits, usually small, which are offered, aggregate them, and keep and invest them safely, paying such interest to the depositors as is thus made, after deducting expenses, and paying the principal upon demand." (See, also, for decisional observations on the historical purposes and functioning of savings institutions, *People* v. *Binghamton Trust Co.*, 139 N. Y. 185, 192; *People* v. *Franklin Nat. Bank of Franklin Sq.*, 305 N. Y. 453, 461; *People* v. *Ulster County Savs. Inst.*, 20 N. Y. S. 148, 150, affd. 64 Hun 434, affd. 133 N. Y. 689; *Matter of Wilkens*, 131 Misc. 188, 193–94.)

Article VI of the Banking Law embodies the legislative grant of authority to savings banks chartered in this State. Section 234 thereof outlines the general powers of savings banks and section 238 prescribes the method of repayment of deposits. Subdivision 3 of section 238 provides that, as a general rule, a savings bank shall not make any payment to a depositor unless a passbook is produced at the time of such payment. Subdivisions 4, 5 and 6 of section 238 provide certain limited exceptions to this general passbook transactional requirement. It is subdivision 6 of section 238 upon which defendants herein premise savings banks' statutory authority for " NOW " accounts, which subdivision provides: " Subject to any regulations and restrictions prescribed by the superintendent of banks, a savings bank may accept deposits without the issuance of a passbook in connection therewith, and may issue such other evidences of its obligation to repay such deposits as may be appropriate to safeguard the interests of the depositors and the savings bank." (L. 1965, ch. 804, § 2, eff. July 15, 1965.)

While the language of subdivision 6 might ostensibly appear unambiguous so as normally to obviate research into legislative intent, nevertheless, accepting as we must the historical distinction between commercial banks and savings banks in their purpose and function in the community and the limited power and authority of savings banks, defendants' conclusions of statutory grant of authority for offering " NOW " accounts by savings banks, constituting such a drastic change, warrants further exploration for confirmation of legislative intent in the enactment of subdivision 6. The then Chairman of the Senate Banking Committee, in his memorandum on introduction of that legislation, stated: " Banking Law, § 238. This bill would permit savings banks, subject to any regulations and restrictions prescribed by the Superintendent of Banks, to accept deposits without the issuance of a passbook, and to issue instead such other evidence of its obligation to pay such deposits as may be appro-

priate to safeguard the interests of the depositors and of the bank.

"Savings banks are already permitted to offer savings accounts unaccompanied by passbooks in certain very limited circumstances, such as employee group deposits. This bill would enable the savings banks to increase the flexibility of their *savings account services* by permitting the acceptance of deposits without passbooks but accompanied by such other evidence of the obligation as would properly safeguard the banks and their depositors. There is a need for such accounts under *various special circumstances* where the use of a passbook is unnecessary and *inconvenient.*" (N. Y. Legis. Annual, 1965, p. 154; emphasis added.) Such expression of purpose hardly warrants the conclusion that authority was granted for the drastic change in savings bank powers as is here urged by defendants. In addition, the Banking Department's memorandum in support of the bill before the Governor for executive action in connection with said proposed subdivision 6, would indicate its basic purpose was the convenience of depositors and savings banks in the processing of savings accounts, as well as to permit savings banks to meet the competition of commercial banks *in connection with savings accounts*. It is significant that the department's memorandum makes reference to the issues here presented, i.e., savings banks' authority to offer services to its depositors comparable to checking accounts. While the department's memorandum acknowledged that the bill contained no express limitation which would prevent nonpassbook accounts from being operated as checking accounts or in a manner similar to checking accounts, reservation of such authority by virtue of other operative sections of the Banking Law, buttressed by opinions of the Attorney-General, is expressed, notwithstanding the enactment of the proposed subdivision 6 provision. In addition, the department specifically observed: " However, the bill authorizes the Superintendent to promulgate regulations and restrictions relating to the operation of non-passbook savings accounts, which would enable the Superintendent, if it became necessary, to issue regulations *to prevent the misuse of non-passbook savings accounts for checking purposes.*" (Banking Dept. Memorandum on Bill Before Governor for Executive Action, p. 4 [July 6, 1965].)

It must, therefore, be concluded, that, in view of the historically functional distinction between savings and commercial banks in this State and the legislative intent of limited reform in the enactment of subdivision 6 of section 238 of the Banking

Law, " NOW " or checking account authority by savings banks cannot be sustained. We are not unmindful of the enlightened recommendations for the grant of such authority to savings banks as contained in the Report of the President's Commission on Financial Structure and Regulation, submitted on December 22, 1972 (pp. 33, 40), the recommendation for changes in the United States Financial System, as revised on September 24, 1973 by the United States Department of Treasury (p. 11) and the New York Report of the Superintendent's Advisory Committee on Financial Reform of March, 1974 (pp. 30–31). Nevertheless, such reform recommendations, under the present status of the New York Banking Law, are properly addressed to legislative as opposed to judicial action.

Concluding as we do that the present New York State statutory provisions foreclose savings bank authority to offer " NOW " accounts to its depositors, we also conclude that the validity of defendant Superintendent's issued regulations in connection therewith cannot be sustained. It is not a question of unreasonableness of administrative policy judgment but, rather, of the Superintendent's complete lack of statutory authority, either specific or implicit, to promulgate regulations pertaining to unfounded and unauthorized activities by savings banks in this State.

The Legislature for years has been a veritable battleground in which practically year after year both commercial and savings banks have sought to procure from it certain powers which would be favorable to each, often to the detriment of the other. *All the enumerated powers of savings banks* in the Superintendent's regulations here under attack have been accomplished by virtue of legislative fiat, and to contend at this late date that the ponderous nature of the legislative processes has made it necessary for the Superintendent to act as he has in the instant proceedings, based upon what he considers laudable motivation, would appear to be without support in law.

Nor are we persuaded to the contrary in our determination by decisional law of sister States, cited by defendants. We are charged with the interpretation of the regulatory provisions of our Banking Law within the evolutionary framework of banking institutions in New York State.

Judgment should therefore be awarded to the plaintiffs herein. with relief granted as requested in their petition.

WITMER, J. P., MOULE and CARDAMONE, JJ., concur.

Controversy unanimously determined in favor of **plaintiffs** **without costs.**