OTERO SAVINGS AND LOAN ASSOCIA-
TION, a Domestic Savings and Loan As-
sociation, organized under the laws of
Colorado, Plaintiff,

v.

The BOARD OF GOVERNORS OF the
FEDERAL RESERVE SYSTEM and the
Federal Reserve Bank of Kansas City,
Missouri, Defendants,

v.

MAJESTIC SAVINGS & LOAN ASSOCIA-
TION, Sun Savings & Loan Association,
Golden Savings & Loan Association, Do-
mestic Savings and Loan Associations,
organized under the laws of Colorado,
Plaintiffs–Intervenors.

Civ. A. No. 80–K–1066.

United States District Court,
D. Colorado.

Sept. 3, 1980.
Amended Sept. 10, 1980.

James A. Clark, Bruce D. Pringle, Baker
& Hostetler, Denver, Colo., John M. Law,
Law, Scheid & Farabee, Denver, Colo., for
plaintiff.

James S. Bailey, Jr., David M. Berrett,
John W. Pharris, Calkins, Kramer, Grim-
shaw & Harring, Denver, Colo., Donald M.
Lesher, Denver, Colo., for plaintiffs–inter-
venors.

Joseph F. Dolan, U.S. Atty., C. Scott
Crabtree, Asst. U.S. Atty., Denver, Colo.,
Robert Swanson, Rendle Myer, Allan B. Ad-
ams, Neef, Swanson & Myer, Denver, Colo.,
Benjamin R. Civiletti, Atty. Gen. of the
U.S., U.S. Dept. of Justice, Washington,
D.C., for defendants.

## AMENDED ORDER GRANTING A PRELIMINARY INJUNCTION

KANE, District Judge.

This case is before me on plaintiff's and
plaintiffs–intervenor's motions for a prelim-
inary injunction restraining defendants
from refusing to accept or process their
drafts through the federal reserve clearing
and collection system in the same manner
as said checks have been cleared and collect-
ed prior to August 18, 1980. A temporary
restraining order to this effect was issued
August 15, 1980 and extended on August
25, 1980.

Plaintiff, Otero Savings and Loan Associ-
ation initiated a program to provide its

customers with checking account services, through the use of funds in their regular savings accounts. The Check–In Program involved the opening of a checking account and a savings account, along with a savings to checking transfer agreement authorizing Otero to transfer automatically funds from the savings account to the checking account for the purpose of honoring checks presented to Otero for Payment. Checks issued by Otero customers are cleared and collected through the federal reserve system by virtue of an agreement between Otero and United Bank of Denver which is a member of the federal reserve system and has the right to use its clearing and collection services. Otero maintains an account with United Bank for the purpose of effecting final settlement of checks issued by Otero customers.[1] Plaintiffs–intervenors have initiated similar programs.[2] However Sun Savings & Loan Association has an additional program which authorizes Sun to honor nonnegotiable instruments drawn by the depositor on a savings account.[3]

In deciding whether a preliminary injunction should issue I must consider:

1. The threat of irreparable harm to the plaintiff in the absence of an injunction.

2. The balance between this harm and the injury granting the injunction might inflict on the defendants.

3. The probability that the plaintiff will succeed on the merits.

4. Whether the public interest will be served by its issuance. Wright & Miller, *Federal Practice and Procedure*: Civil ¶ 2948.

Plaintiff and plaintiffs–intervenors have established that they will suffer irreparable harm if the defendants' proposed actions are not enjoined. In the absence of reasonable alternative clearinghouse services, they will be forced to interrupt the banking services of almost 19,000 customers. While defendants have shown that some alternative means of clearing and processing these checks are available, it is unrealistic to suggest that in the current commercial milieu financial institutions such as the plaintiff can clear checks outside the clearinghouse system and it is abundantly clear that the federal reserve bank is the linchpin of the system. The precipitous cessation of the participation in the system by Otero and the plaintiffs–intervenors would result in dire and probably devastating consequences to them in the marketplace. Such consequences include severe confusion of processes and loss of good will and customer confidence in these institutions. This harm cannot be rectified by money damages; hence the remedy at law is inadequate. Also, I take into consideration that administrative proceedings before the Federal Home Loan Bank Board are currently pending. They were initiated by the Federal Savings and Loan Insurance Corporation ("FSLIC") pursuant to 12 U.S.C. § 1730(e)(1) to compel Otero to cease and desist the Check–In Program. The defendants proposed actions would in effect render these proceedings moot. Otero would have to dismantle its programs prior to a determination by an administrative body. This would impair the agency's ability to grant an effective remedy and deny Otero the notice and hearing procedures accorded to it by law pursuant to 12 U.S.C. § 1730(e)(1).

The injury to defendants flowing from the issuance of this injunction is non–existent when measured against the resulting harm which would be suffered by plaintiffs if it is denied. The defendants have been accepting such instruments all along with no harm to them and can continue to do so during the pendency of this action without incurring harm commensurate with or exceeding the correlative harm to Otero and the plaintiffs–intervenors were the injunction to be refused.

12 U.S.C. § 1832(a) prohibits depository institutions from allowing the owners of a deposit or account on which interest or divi-

---

1. Complaint, ⸴ 10.

2. Complaint in Intervention, ⸴ 12a, b.

3. Complaint in Intervention, ⸴ 13a, b.

dends are paid to make withdrawals by negotiable or transferable instruments for the purpose of making transfers to third parties, except in eight states.[4] Otero and plaintiffs–intervenors claim that § 1832 is unconstitutional because activity is prohibited in some states while expressly allowed in others, that their activities do not come within its prohibitions, and that in any case the Federal Reserve Board has no power to enforce this provision. In addition they allege a violation of their due process rights since § 1832 is already being enforced by the FSLIC and those proceedings would be rendered moot by defendants proposed actions.

The legislative history of § 1832 indicates that Congress was concerned about the effect of Negotiable Order of Withdrawal accounts on the competitive balance between various financial institutions and the serious disruptions which could result from their use. However, testimony from the Federal Reserve Bank, among others, indicated that at that time, 1973, the evidence of disruption was not sufficient to warrant their total prohibition. Therefore, they were allowed in the states where they were currently permitted by state law, namely New Hampshire and Massachusetts.[5] However Congress did want to monitor these accounts and therefore included in the bill a section giving the FDIC authority to monitor the effects of Negotiable Order of Withdrawal accounts and take swift corrective action where necessary. The legislative history indicates that the actual legality of such accounts is determined by the laws, banking regulations, and judicial decisions of the individual states. S.R. No. 93–149, 93rd Cong., 1st Sess., reprinted in (1973) U.S. Code Cong. & Admin. News pp. 2014, 2015–6. Thus, there appears to be a rational basis for allowing these accounts in some states but not others, rendering plaintiff's equal protection claims weak although not defeated. The legislative history does raise the question of whether these accounts are prohibited by Colorado law.

C.R.S. § 11–6–102(1) provides that the payment of interest, directly or indirectly, on demand accounts is prohibited. However it is open to question whether plaintiffs come within this section since they do not pay interest on demand accounts, but on savings accounts. Plaintiff–intervenor Sun seems to come within this prohibition. C.R.S. § 11–6–102(2) provides that savings deposits shall be repaid to the depositor under such regulations as the board of directors of the state bank shall prescribe. Similar statutory provisions have been held to permit Negotiable Order of Withdrawal accounts, *Savings Bank of Baltimore v. Bank Commissioner*, 248 Md. 461, 237 A.2d 45 (1968), *Consumers Savings Bank v. Commissioner of Banks*, 361 Mass. 717, 282 N.E.2d 416, 64 A.L.R.3d 1310 (Mass. 1972), while other courts have held the opposite, *N.Y.S. Bankers Assoc. v. Albright*, 46 A.D.2d 269, 361 N.Y.S.2d 949 (1974). In the instant case the Colorado State Savings and Loan Commissioner, in consultation with the Colorado Attorney General, approved Sun's program prior to its initiation. Thus this issue should be developed further rather than curtailed by the issuance of a preliminary injunction. In *U.S. League of Savings Assoc. v. Board of Governors of the Federal Reserve Board*, 463 F.Supp. 342 (D.D.C.1978), vacated and set aside without opinion, *American Bankers Association v. Connell*, 595 F.2d 887, 888 (C.A.D.C.), the court emphasized the existence of two accounts in holding that the automatic fund transfer service, from savings to checking accounts, offered by commercial banks did not violate § 1832. The court held that two accounts are required to operate the AFT service and therefore no negotiable orders are drawn on, or third party payment made from, a savings deposit. It is probable that plaintiff's activities do not fall within the statute. This issue is currently being litigated before an administrative body. The probability of success on the merits is fur-

---

4. Mass., Conn., R.I., Maine, Vermont, N.Y., N.J., and N.H.

5. Amended 1976, 1978, 1979.

ther support for the issuance of a preliminary injunction.[6]

Enforcement of § 1832 seems to fall within the authority of the FDIC, 12 U.S.C. § 1811, *et seq.* The legislative history indicates that the FDIC is to keep watch on such deposits and their effect on other institutions. The Federal Reserve Bank regulates member banks pursuant to 12 U.S.C. § 221. However Otero, Majestic, Sun, and Golden are not members of the Federal Reserve System, but are simply institutions whose deposits are insured by the FDIC. The FSLIC is presently enforcing the statute against Otero. The defendants have no apparent enforcement power over this provision. The probability of plaintiff succeeding on this issue is further support for the issuance of this injunction.

The defendants have the power to establish and regulate clearinghouses pursuant to 12 U.S.C. § 248(*o*) and 12 C.F.R. 210.2 *et seq.* (Regulation J) thereunder. 12 U.S.C. § 342, § 347, and § 360 further regulate these activities as to member and nonmember banks. Pursuant to Regulation J, the Federal Reserve Bank has defined "item"[7] and plaintiff and plaintiffs–intervenors claim that since they fall within that definition, defendants cannot refuse to process their checks. In *Independent Banker Assoc. of America v. Board of Governors of the Federal Reserve System*, 500 F.2d 812 (C.A.D.C.1974) in deciding whether a new rule within regulation J was arbitrary and capricious, the court found that such regulations were subject to judicial review. The court further held that having established such services for member and non–member banks, the board could not unreasonably jeopardize or prejudice operations by alterations in the way service is administered to either. That non–members can choose not to use this service does not relieve the board of this obligation, particularly as there remains no comparable alternative in terms of speed and efficiency. Adequate provisions must be made for non–member banks. In the instant case however, plaintiff and plaintiffs–intervenors will in effect be put out of business as to these particular accounts if the defendants are allowed to proceed. They will also be denied a meaningful hearing on a statute the Federal Reserve Bank has no authority to enforce. In the absence of strong statutory authority to the contrary, defendants actions should be enjoined.

I recognize that these findings are made on only a sketchy record and they are thus only tentative. Given the probability of success on the merits and the fact that irreparable harm will result to plaintiffs and plaintiffs–intervenors in its absence, I find that the preliminary injunction should issue.

Having found that a definite threat of irreparable injury to the plaintiff and the plaintiffs–intervenors clearly exists and that the plaintiff and plaintiffs-intervenors have shown a reasonable probability of success on the merits, I now address the remaining two factors which I must consider. It seems patently clear that the effects of cutting off the activities of plaintiff and plaintiffs–intervenors in midstream would have devastating effects on their respective enterprises. By contrast, no evidence has been offered to show that defendants will suffer in any way by the granting of this preliminary injunction. Given the lack of apparent authority to enforce § 1832(a) I question why the defendants have undertaken this activity at all. The motives are not clear and I am confident that they will surface if the status quo is preserved by the issuance of this preliminary injunction and the case is allowed to proceed through the pre–trial process. The balance between the harm sought to be enjoined and the injury which granting the preliminary injunction might inflict upon the defendants is struck

---

**6.** Defendants principal thrust is that the two account system is a sham and that I must pierce the form and look at the substance. I agree wholeheartedly, but I need a trial with its panoply of discovery, research and preparation in order to undertake such a probe. The exigencies attendant upon a preliminary hearing do not permit me to proceed with such an effort at this point.

**7.** Complaint, ⸖ 16, p. 6.

decisively in favor of the plaintiff and the plaintiffs–intervenors.

Finally, it appears to me to be beyond cavil that the public interest will be served best by the issuance of this preliminary injunction. There are innumerable merchants and others engaged in commerce who are receiving these checks. There are check forms in the possession of plaintiff's and plaintiffs–intervenors' customers which cannot be effectively recaptured if defendants are allowed to proceed in the summary fashion they have charted. Absent this preliminary injunction I can perceive of nothing but confusion being visited on members of the public who are neither parties to this action nor represented in the litigation. This perception of the public interest leads me to the conclusion that a preliminary injunction should issue in order to preserve the status quo. Accordingly, it is hereby

ORDERED that plaintiff's motion for a preliminary injunction is granted, and it is further

ORDERED that plaintiffs-intervenors' motion for a preliminary injunction is granted, and it is further

ORDERED that the terms of the preliminary injunction are the same as those contained in the temporary restraining order previously entered and incorporated herein by this reference. Should the parties or any party desire to modify the terms of this preliminary injunction, the court will review any tendered form of injunction and set the matter for hearing if agreement to the terms thereof is not achieved.