665 F.2d 275
 OTERO SAVINGS AND LOAN ASSOCIATION, Majestic Savings & Loan
Association, Sun Savings & Loan Association, and Golden
Savings & Loan Association, all domestic Savings and Loan
Associations organized under the laws of Colorado,
Plaintiff-Appellee, Plaintiff-Intervenors-Appellees,
v.
The FEDERAL RESERVE BANK OF KANSAS CITY, MISSOURI,
Defendant-Appellant.
 No. 80-1946.
 United States Court of Appeals,
Tenth Circuit.
 Argued and Submitted Feb. 17, 1981.
Decided Nov. 13, 1981.
 
 James A. Clark and Bruce D. Pringle of Baker & Hostetler, Denver, Colo., for plaintiff-appellee Otero Savings and Loan Association; Law, Scheid & Farabee, Denver, Colo., with them on the brief.
 James S. Bailey, Jr., Denver, Colo., John W. Pharris and Charles E. Norton with him on the brief of Calkins, Kramer, Grimshaw & Harring, Denver, Colo., for plaintiff-intervenor-appellees Majestic Savings and Loan Association, Sun Savings and Loan Association, and Golden Savings and Loan Association.
 Donald M. Lesher, P.C., Denver, Colo., with him on the brief for plaintiff-intervenor-appellee Majestic Savings and Loan Association.
 Robert Swanson, Denver, Colo. (Rendle Myer and Allan B. Adams, Denver, Colo., with him on the briefs) of Neef, Swanson & Myer, Denver, Colo., for defendant-appellant.
 Before HOLLOWAY, McKAY and LOGAN, Circuit Judges.
 McKAY, Circuit Judge.
 
 
 1
 Appellant Federal Reserve Bank of Kansas City (Reserve Bank) appeals from the federal district court's granting of a motion for a preliminary injunction. Four Colorado state-chartered savings and loan associations (Associations) obtained a preliminary injunction in the United States District Court for the District of Colorado against the Board of Governors of the Federal Reserve System and the Federal Reserve Bank of Kansas City.[1] The order required the Federal Reserve Bank to refrain from refusing to process the Associations' checks and drafts through its clearing and collection system. The Reserve Bank had given the Associations notice[2] that it would no longer process their checks and drafts after it independently had determined that the checks were issued under a program not authorized by 12 U.S.C.A. § 1832 (Supp.1980) or Colorado Savings and Loan law.[3] The Associations offered an interest-bearing savings account and a non-interest-bearing checking account that were linked together by a written transfer agreement, authorizing the Associations to transfer funds from the savings to the checking account. This arrangement allowed depositors to maintain zero balance checking accounts to which funds from the savings account were automatically transferred whenever a check was presented. The checks were then cleared through the Federal Reserve System by an agreement between the Associations and a member of the Reserve Bank. The evidence shows that the Reserve Bank cleared these checks and drafts without incident from the inception of the Associations' program in April, 1980, until August, 1980, when the bank attempted to change its policy. At that time, the Associations sought and obtained the preliminary injunction that is the subject of this action.[4] The Associations' main contention is that the Reserve Bank exceeded its authorized power by attempting to use its collection system as a device to enforce 12 U.S.C. § 1832.
 
 
 2
 Appellate review of an order granting or denying a preliminary injunction is usually limited to determining whether the trial court's action was clearly erroneous or constitutes an abuse of discretion. Continental Oil Co. v. Frontier Refining Co., 338 F.2d 780, 781 (10th Cir. 1964). The merits of such a case may be considered on appeal only insofar as they bear on the issue of judicial discretion. United States v. Brown, 331 F.2d 362, 364-65 (10th Cir. 1964). Appellant strenuously argues that this case warrants a different standard of review. The Reserve Bank contends that the sole issue involved in this case is the legality of the Associations' two account programs, and that the district court erred by not resolving this issue at the preliminary injunction stage of the proceeding. Because of this alleged error, the Reserve Bank maintains that this court should disregard the generally accepted rules of appellate review of an order granting a preliminary injunction and decide this case on the merits.
 
 
 3
 The primary function of a preliminary injunction is to preserve the status quo pending a final determination of the parties' rights. Penn v. San Juan Hospital, Inc., 528 F.2d 1181, 1185 (10th Cir. 1975). It is true, however, that in some exceptional cases appellate courts have looked beyond the issue of whether the trial court abused its discretion and have decided cases on their merits. See Kansas ex rel. Stephan v. Adams, 608 F.2d 861 (10th Cir. 1979); Delaware & Hudson Railway v. United Transportation Union, 450 F.2d 603 (D.C.Cir.1971). This extraordinary review is generally limited to cases in which the trial court has ruled on the motion for preliminary injunction based on a final interpretation of law, as applied to undisputed facts. Kansas ex rel. Stephan v. Adams, 608 F.2d at 867 n.5; Delaware & Hudson Railway v. United Transportation Union, 450 F.2d at 620. However, in this case, neither the interpretation of the law nor the facts was settled when equitable relief was granted. The trial court expressly refused to make a determination of the legality of the Associations' two account systems until further research, preparation and discovery could be carried out. In fact, a ruling on the validity of the accounts by the district court would have been inappropriate at that time because that issue was the subject of hearings by the Federal Home Loan Bank Board, an agency with special expertise in this subject, which makes it the proper tribunal for the initial determination of legality.[5] The district court noted that the Reserve Bank's proposed actions would render the administrative proceedings moot because the Associations would be forced to dismantle their programs prior to a determination by the administrative body, thus denying them the notice and hearing procedures incorporated in 12 U.S.C. § 1730(e)(1) (1976). If the district court had been in a position to finally determine any legal issue in this case, it would have been the one squarely presented by the Associations, viz., whether the Federal Reserve Bank in fact had the authority to refuse to clear the Associations' checks on five days' notice based on its own determination that the checks were issued in violation of the law.[6] However, the status of the evidence at the preliminary injunction hearing precluded a determination of this issue on the merits.
 
 
 4
 Therefore, we conclude that the trial court applied the correct standard of review in determining whether or not to grant the injunction, and we too decline to undertake an examination of the merits at this stage of the action. Therefore, our review is limited to determining whether the district court abused its discretion in granting the preliminary injunction.
 
 
 5
 This circuit has adopted the following test for appellate review of preliminary injunctions:
 
 
 6
 (T)he moving party must establish: (1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest. (Citations omitted).
 
 
 7
 Lundgrin v. Claytor, 619 F.2d 61, 63 (10th Cir. 1980). Our review of the record convinces us that the district court did not abuse its discretion in granting the injunction. The court found that the Associations had established that they would suffer irreparable harm if the Reserve Bank's proposed actions were not enjoined. This was based on the finding that alternative clearinghouse procedures were not realistically available, so that the Associations would be forced to interrupt services to 19,000 customers. The court noted that such a disruption would involve consequences such as "severe confusion of processes and loss of good will and customer confidence in these institutions." Otero Savings and Loan Association v. Board of Governors, 497 F.Supp. 370, 371 (D.Colo.1980).
 
 
 8
 The district court determined that the potential injury to the Reserve Bank from the granting of an injunction was "nonexistent when measured against the resulting harm which would be suffered by plaintiffs" if it were denied. Id. The Reserve Bank had accepted the drafts for four months without incurring any losses, and the court determined that it could continue to do so during the pendency of this action.[7]
 
 
 9
 The district court also found that Associations were likely to succeed on the merits. The Reserve Bank claims that this finding was clearly erroneous, because the Associations' two account systems violated the law. However, the legality of the Associations' program has not yet been determined by the appropriate tribunal, and this issue was not ready for resolution at the preliminary injunction stage of the action. Instead, the issue before the court was solely the power of the Reserve Bank to stop processing the Associations' checks and drafts in this situation. The court noted that the enforcement of 12 U.S.C. § 1832 is vested in administrative agencies other than the Reserve Bank, so that it has no enforcement power over this provision. The court determined that neither the Reserve Bank's power to establish and regulate clearinghouses[8] nor its power to regulate the activities of member and non-member banks[9] provided statutory authority for the bank's actions. 497 F.Supp. at 373. The Tenth Circuit has adopted the Second Circuit's liberal definition of the "probability of success" requirement. When the other three requirements for a preliminary injunction are satisfied, "it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation." Continental Oil Co. v. Frontier Refining Co., 338 F.2d 780, 782 (10th Cir. 1964) (citing Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1953)). See Lundgrin v. Claytor, 619 F.2d 61, 63 (10th Cir. 1980). In a situation such as this, where there is no strong statutory authority granting the Reserve Bank the power it purports to exercise, the district court properly determined that the Associations were likely to succeed on the merits with regard to their claim that the Reserve Bank had exceeded its authority.[10]
 
 
 10
 Finally, the district court found that the public interest would be served by the granting of a preliminary injunction, because it would prevent the disruption and confusion the termination of such service would certainly cause. The district court carefully reviewed this case in terms of the four stated requirements and determined that plaintiffs had met their burden of establishing a prima facie case with regard to each requirement.
 
 
 11
 After reviewing the evidence in this case, we conclude that the trial court applied the proper legal standard relating to the issuance of this injunction, and that the court's actions in granting the injunction were neither clearly erroneous nor an abuse of its discretion.
 
 
 12
 The order appealed from is AFFIRMED and the case is REMANDED.
 
 
 
 [1]
 Otero Savings and Loan Association was the original plaintiff. Majestic Savings and Loan Association, Sun Savings and Loan Association, and Golden Savings and Loan Association filed a motion to intervene, which was granted. Only the Reserve Bank has appealed the district court's order granting the preliminary injunction
 
 
 [2]
 On August 6, 1980, the Reserve Bank notified the Associations that after August 11, 1980, it would refuse to process their checks and drafts. The Reserve Bank delayed this action until August 18, 1980
 
 
 [3]
 In Otero Savings and Loan Association v. Federal Home Loan Bank Board, 665 F.2d 279 (10th Cir. 1981), also decided today, we confirmed the illegality of these programs under federal law
 
 
 [4]
 On August 15, 1980, the United States District Court for the District of Colorado entered a temporary restraining order prohibiting the Reserve Bank from refusing to accept and process the checks. The terms of the temporary restraining order were incorporated in the preliminary injunction. The Order Granting Preliminary Injunctive Relief was entered on September 3, 1980, and amended on September 10, 1980. It appears at 497 F.Supp. 370 (D.Colo.1980)
 
 
 [5]
 On June 23, 1980, the Federal Savings and Loan Insurance Corporation (FSLIC) instituted an administrative proceeding pursuant to 12 U.S.C. § 1730(e) claiming that Otero's Check-In program violated 12 U.S.C. § 1832(a). This proceeding culminated in the Decision and Order of the Federal Home Loan Bank Board (FHLBB) and FSLIC, which was the subject of the appeal in the related case, Otero Savings and Loan Association v. Federal Home Loan Bank Board, 665 F.2d 279 (10th Cir. 1981), also decided today
 
 
 [6]
 This issue remains to be determined on the merits by the district court. However, there is some indication that in light of the Depository Institutions Deregulation and Monetary Control Act of 1980, Pub.L.No. 96-221, 94 Stat. 132 (1980), and this court's decision in Otero Savings and Loan Association v. Federal Home Loan Bank Board, 665 F.2d 279 (10th Cir. 1981), this issue may become moot
 
 
 [7]
 The Reserve Bank raised the issue of possible liability on warranties extended pursuant to regulations governing Federal Reserve Banks, 12 C.F.R. § 210.6 (1981), and Article 4 of the Uniform Commercial Code, but did not outline explicitly how the Bank could suffer any losses in this situation
 
 
 [8]
 12 U.S.C. § 248(o), 12 C.F.R. 210.2 et seq. and Regulation J thereunder
 
 
 [9]
 12 U.S.C. § 342, 347, & 360
 
 
 [10]
 In response, the Reserve Bank asserts that "any person, firm or corporation, including the Federal Reserve Bank, has the right to refuse to participate in a violation of law." Reply Brief, p. 16. This is just another means of asserting the broad power to enforce regulatory provisions, which is essentially part and parcel of the Reserve Bank's argument that it possesses such "implied and incidental powers as are necessary for them to carry out the tasks assigned to them by Congress." Presumably these implied powers allow the bank to investigate programs and refuse to participate in their continuation if they are found to be contrary to law. This argument, however, provides rather sparse authority for the Bank's exercise of broad regulatory powers already committed to other regulatory agencies, as it has attempted to do here