**SIZEWISE RENTALS, INC., Plaintiff,**

v.

**MEDIQ/PRN LIFE SUPPORT SERVICES, INC.,**
**Defendant.**

**No. Civ.A. 99–2304–GTV.**

United States District Court,
D. Kansas.

Feb. 17, 2000.

Robert W. Tormohlen, Kansas City, MO, Leonard B. Rose, Lewis, Rice & Fingersh, L.C., Kansas City, MO, for SizeWise Rentals Inc., a Kansas corporation, plaintiff.

J. Eugene Balloun, Shook, Hardy & Bacon L.L.P., Overland Park, KS, Adam Cutler, Arthur S Gabinet, Dechart Price & Rhoads, Philadelphia, PA, for Mediq/PRN Life Support Services, Inc., a Delaware corporation, defendant.

### MEMORANDUM AND ORDER

VanBEBBER, Chief Judge.

Plaintiff SizeWise Rentals, Inc. brings this diversity action against defendant Mediq/PRN Life Support Services, Inc., alleging breach of implied covenant of good faith and fair dealing, breach of contract, fraudulent non-disclosure, negligent non-disclosure, and breach of fiduciary duty, and requesting damages, declaratory judgment, and an accounting. The case is before the court on plaintiff's motion for preliminary injunction (Doc. 16). Plaintiff seeks to enjoin defendant from leasing any hospital beds, mattresses, support services, commodes, walkers, wheelchairs, lifts, or transfer systems that are designed to be used by patients whose weight exceeds 350 pounds to any hospital or facility that rented SizeWise equipment during the period of the contract that is at issue in this action.

Following a hearing before the court and after carefully considering the arguments of counsel, as well as the testimony of witnesses, the exhibits, and the briefings submitted by the parties, the court concludes that plaintiff is entitled to a preliminary injunction as outlined below. The court makes the following findings of fact and conclusions of law pursuant to Fed. R.Civ.P. 52(a).

### I. Findings of Fact

Plaintiff SizeWise Rentals, Inc. is a Kansas corporation with its primary place of business in Ellis, Kansas. Defendant Mediq/PRN Life Support Services, Inc. is a Delaware corporation with its primary place of business in the State of New Jersey. This court has diversity jurisdiction, as the action is between citizens of different states and the amount in controversy exceeds $75,000.

Plaintiff has been in business since approximately 1994; it is engaged in the business of distributing and leasing bariatric equipment to hospitals and other acute health care facilities. The term "bariatric equipment" in the context of this case means any product that is specifically designed for a patient weighing over 350 pounds. Plaintiff's product line includes bariatric hospital beds, air mattresses, wheelchairs, commodes, walkers, lifts, and transfer systems. Plaintiff was one of the first companies to market obese patient aids as a "full room environment," which means marketing a set of bariatric products as a complete package to care for all the needs of obese patients. Plaintiff does not conduct any business activity other than the manufacture and/or distribution of bariatric products.

Defendant is currently engaged in the business of distributing and leasing all types of hospital and medical equipment, including bariatric equipment. Although bariatric products generate less than 3% of defendant's total revenues, defendant considers such products an integral part of its product line because it endeavors to be a "one-stop shop" for its customers.

In November 1997, plaintiff and defendant entered into a "Consignment for

Rent/Rental Agreement" ("Agreement"). Pursuant to the Agreement, from November 1, 1997 until October 31, 1999, defendant agreed to lease, and plaintiff agreed to supply, a set of eight bariatric products for rental in certain territories.[1]

For the next two years, defendant distributed plaintiff's equipment to the consumers, entered into rental contracts with them, and billed them. Plaintiff retained ownership of the equipment and maintained liability insurance for it. Plaintiff also provided marketing and technical training to defendant's employees at its Ellis, Kansas facility, employed four regional managers who assisted defendant with marketing and training, and provided a toll-free telephone number for users of the equipment. Over the course of the term of the Agreement, defendant leased plaintiff's equipment to approximately 268 hospitals, health care facilities, or other facilities.[2]

The Agreement contained a "covenant against piracy" prohibiting defendant from competing with plaintiff for one year following the Agreement's termination. The covenant provided that:

> 8. *Privacy, Trade Secrets and Confidential Information*
>
> (b) During the term of this Agreement and for a period of one (1) year immediately following the termination of this Agreement, [defendant] shall not: (i) call upon, solicit, divert or take away, or accept rental business for Specialty Equipment[3] from any customer in the Territory that has been referred to [defendant] by [plaintiff] or (ii) directly or indirectly request or advise any present or future customers of [plaintiff] within the Territory to withdraw, curtail, alter

or cancel their business with [plaintiff]. It is specifically acknowledged, understood and agreed by [defendant] that the covenant against piracy as provided in this paragraph 8(b) is a material inducement for [plaintiff] to retain the services of [defendant], to grant the Territory to [defendant] and to allow [defendant] limited use of the SizeWise tradenames and trademarks and access to the trade secrets and proprietary and confidential information referenced below, and that [plaintiff] would not enter into this Agreement, agree to retain the services of [defendant] or grant such rights or access absent this covenant.

Sometime in mid–1999, the relationship broke down, and in July 1999, plaintiff filed its complaint in this action, alleging that defendant wrongfully sold, rented, and marketed obese patient aids manufactured by plaintiff's competitors, that defendant utilized plaintiff's confidential information to do so, and that defendant committed numerous other breaches of the Agreement. The Agreement expired by its terms on October 31, 1999. On November 9, 1999, plaintiff filed a motion for temporary restraining order and preliminary injunction, seeking to restrain defendant from violating the covenant contained in Section 8(b)(ii) of the Agreement. Defendant intends to continue to rent bariatric beds and other bariatric products to facilities in the territory.

On December 17, 1999, the court heard arguments on plaintiff's motion for preliminary injunction. Plaintiff's officers testified in the hearing that plaintiff received referrals from facilities being served pursuant to the Agreement, that referrals are an important source of its business, and

---

**1.** The territory in the Agreement originally comprised twenty counties in five states. In March 1999, the parties expanded the territory of the Agreement. The expanded territory comprised fifty counties in nine states.

**2.** A list of these facilities is attached as Exhibit A. [Editor's Note: Exhibit A was filed under seal and is not available.]

**3.** The Agreement defines "Specialty Equipment" as a set of eight "obese patient aids and products leased by SizeWise" listed in Exhibit A to the Agreement: the "Bari–Rehab Platform (bed)," "Bari–Full Frame Trapeze," "Mighty Air Alternating Low Air Loss [Mattress]," "Bari–Lift & Transfer System 750," "Bari–Chair (wheelchair)," "Bari–Recliner," "Bari–Shower/Commode Chair," and "Bari–Walker."

that facilities being served pursuant to the Agreement were aware that they were using plaintiff's equipment. In addition, the Agreement specifies several interests of plaintiff, such as trade names, trademarks, trade secrets, and proprietary and confidential information, that plaintiff specifically sought to protect with Section 8(b)(ii). The court finds that the value of these interests cannot be measured in numerical or monetary terms.

A significant portion of the bariatric equipment industry is driven by immediate customer needs and product availability. Often, facilities rent bariatric equipment only on an "as-needed" basis, and may only occasionally rent such equipment. In the medical supply business, however, distributors often establish long-term relationships with hospitals and health care facilities in which the distributor serves as the primary vendor for all of a customer's medical equipment needs. The court finds that, despite the unpredictable and sporadic nature of bariatric equipment rental, a long-term ongoing relationship between a distributor and a facility poses a significant barrier to other manufacturers or distributors attempting to rent bariatric equipment to that facility.

By defendant's own admission, this type of long-term relationship exists currently between defendant and many of the facilities to which it rented plaintiff's bariatric equipment pursuant to the Agreement; the court further finds that these relationships will seriously impede, if not bar, plaintiff's attempts to rent bariatric equipment to those facilities. If defendant continues to do bariatric business with those facilities, the court finds that the good will, brand recognition, referral sources, and customer contacts that plaintiff has developed with the facilities will be destroyed or seriously eroded, and that plaintiff will lose the revenue it had been receiving from the facilities during the year specified in Section 8(b) of the Agreement.

## II. Conclusions of Law

■ A preliminary injunction is an extraordinary remedy that is granted as the exception rather than the rule. *See Buca, Inc. v. Gambucci's, Inc.,* 18 F.Supp.2d 1193, 1200 (D.Kan.1998) (citing *GTE Corp. v. Williams,* 731 F.2d 676, 678 (10th Cir.1984)). "The main purpose of a preliminary injunction is to preserve the status quo pending a trial on the merits in order for the trial court to render a meaningful decision." *Id.* at 1200–01 (citing *Resolution Trust Corp. v. Cruce,* 972 F.2d 1195, 1198 (10th Cir.1992)). The determination whether to grant a preliminary injunction rests within the sound discretion of the trial court. *See United States v. Power Eng'g Co.,* 191 F.3d 1224, 1230 (10th Cir.1999) (reviewing the grant of a preliminary injunction for abuse of discretion). To prevail, plaintiff must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm in the absence of an injunction; (3) the threatened harm outweighs the injury that an injunction may impose upon the opposing party; and (4) an injunction is not adverse to the public interest. *See Kansas Health Care Ass'n, Inc. v. Kansas Dept. of Social & Rehabilitation Services,* 31 F.3d 1536, 1542 (10th Cir.1994).

■ The Tenth Circuit has adopted a modified interpretation of the "likelihood of success" requirement. If the other requirements for a preliminary injunction are satisfied, the movant can establish the "likelihood of success" requirement merely by showing "questions going to the merits so serious, substantial, difficult and doubtful, as to make the issues fair ground for litigation and deserving of more deliberate investigation." *Buca,* 18 F.Supp.2d at 1201 (citing *City of Chanute v. Kansas Gas & Elec. Co.,* 754 F.2d 310 (10th Cir.1985) and *Otero Sav. & Loan Ass'n v. Federal Reserve Bank,* 665 F.2d 275 (10th Cir. 1981)). The court concludes that plaintiff's request for a preliminary injunction meets these four necessary requirements.

## A. Likelihood of Success on the Merits

■ Plaintiff has demonstrated a reasonable probability that it will eventually

prevail on the merits in this case with respect to its claim that defendant is breaching the covenant contained in Section 8(b) of the Agreement. In that Section, defendant agreed to two simultaneous courses of action that would commence once the Agreement had been terminated: in Section 8(b)(i), defendant agreed not to "call upon, solicit, divert or take away, or accept rental business for Specialty Equipment" from any customer referred to defendant by plaintiff; in Section 8(b)(ii), defendant agreed not to "directly or indirectly request or advise any present or future customers of [plaintiff] within the Territory to withdraw, curtail, alter or cancel their business with [plaintiff]." The parties disagree about whether defendant is violating Section 8(b)(ii) if it continues to supply bariatric equipment to facilities in the Agreement's territory.

█ Defendant offers several arguments as to why Section 8(b)(ii) does not prevent it from continuing to supply bariatric equipment to those facilities in the territory to which it supplied plaintiff's bariatric equipment during the term of the Agreement. First, defendant argues that Section 8(b)(ii) does not apply because the vast majority of the 268 facilities to which defendant supplied plaintiff's products during the term of the Agreement are defendant's customers and not plaintiff's. Defendant points out that the vast majority of these facilities were defendant's customers before they rented any of plaintiff's equipment. During the term of the Agreement, however, each of these facilities did rent and use plaintiff's equipment. Plaintiff produced brochures and "roll-out" materials explaining its products, had a small team of managers that assisted defendant with distribution, and maintained a toll-free number for the benefit of the facilities using its products. Common sense dictates, and the court concludes, that the facilities to which defendant rented plaintiff's bariatric equipment are customers of both plaintiff and defendant.

█ Second, defendant argues that supplying bariatric equipment to these facilities does not violate Section 8(b)(ii) because such behavior does not "directly or indirectly request or advise" plaintiff's customers to "withdraw, curtail, alter or cancel their business" with plaintiff. The court disagrees. If defendant sells bariatric equipment to these facilities, it will violate the Agreement by indirectly—if not directly—requesting that the facilities not do business with plaintiff, especially because defendant endeavors to establish or maintain long-term "one-stop shop" relationships with them. That type of relationship, by its very nature, anticipates that the facilities do business only with defendant, and not with plaintiff.

█ Third, defendant argues that Section 8(b)(ii) is an illegal restraint on trade because it does not protect any of plaintiff's legitimate interests and instead constitutes an attempt to prevent ordinary competition. The court disagrees. "A noncompetition agreement is enforceable under Kansas law if it is reasonable and not inimical to the public welfare. On the other hand, a noncompetition agreement is unenforceable if it furthers an illegitimate interest or if it is unsupported by consideration." *Heldor Industries, Inc., v. Johnston,* No. 88–2544–O, 1988 U.S.Dist. LEXIS 13645 (D.Kan. Nov. 17, 1988) (citing *Eastern Distributing Co., Inc., v. Flynn,* 222 Kan. 666, 567 P.2d 1371, 1376 (1977)). *See also Weber v. Tillman,* 259 Kan. 457, 913 P.2d 84, 89 (1996). The covenant, as the court has construed it, restricts defendant for one year from doing bariatric business with plaintiff's customers within the Territory; it does not restrict defendant from doing non-bariatric business with plaintiff's customers within the Territory, from maintaining business relationships with those customers, or from doing bariatric business with other customers in the Territory. Such a restraint is reasonable, as is the one-year term of the covenant, and does not seek merely to prevent defendant from engaging in "ordinary competition of the kind a stranger could give." *Weber,* 913 P.2d at 92. Rather, the

restraint seeks to protect plaintiff's legitimate interests in customer contacts, good will, brand recognition, and referral sources. *See Eastern Distributing,* 567 P.2d at 1376; *Weber,* 913 P.2d at 90–92. The court concludes that the covenant is reasonable, and therefore not detrimental to the public welfare. See *Uarco, Inc., v. Eastland,* 584 F.Supp. 1259, 1262 (D.Kan. 1984). Plaintiff is likely to succeed on the merits in this case because defendant's conduct violates the covenant.

### B. Irreparable Harm

■ Defendant argues that injunctive relief is not necessary because any harm plaintiff suffers can be compensated in damages. The court disagrees. Plaintiff's interests in good will, brand recognition, customer contacts, and referral sources cannot be measured in numerical or monetary terms, and neither can the damages to these interests that plaintiff will suffer without injunctive relief. If defendant continues to supply bariatric equipment to these facilities, it will cause plaintiff irreparable harm because of the "extreme difficulty and uncertainty in restoring goodwill among the customers, and [the difficulty in] regaining the business of customers who are being, and will be, induced away or lost by the plaintiff." *Inter–Collegiate Press, Inc. v. Myers,* 519 F.Supp. 765, 769 (D.Kan.1981). *See also Heatron, Inc. v. Shackelford,* 898 F.Supp. 1491 (D.Kan. 1995) (finding irreparable harm where, absent injunctive relief, "it would be impossible to precisely calculate the amount of damages [plaintiff] would suffer because of the inherent difficulty in quantifying the loss of [plaintiff's] competitive advantage in the marketplace, and the damages resulting from loss of customers and good will").

### C. Balance of Harms

■ Without injunctive relief, plaintiff will almost certainly be unable to do business with many of the 268 facilities specified in Exhibit A. Defendant admits that it already has long-term, comprehensive relationships with most of the facilities, and the court has found that these long-term relationships will likely preclude plaintiff from supplying bariatric equipment to the facilities. Defendant argues that if it is enjoined from supplying bariatric equipment to these facilities, it will lose its "one-stop shop" relationships with them and suffer much greater harm than the harm plaintiff would suffer without an injunction. The court disagrees. Defendant's argument is undermined by its own admission at the court's hearing that it is not uncommon for a medical equipment distributor either to be unable to supply bariatric equipment upon request or to refer its customer to a competitor when it is unable to supply bariatric equipment. Furthermore, even if defendant were certain to lose those relationships, the court concludes that such harm constitutes bargained-for legal detriment—consideration which defendant promised in exchange for plaintiff's promise to enter into the Agreement. The court concludes that the harm to plaintiff without injunctive relief outweighs any harm to defendant with injunctive relief.

### D. Public Interest

■ The public's interest in upholding viable contracts outweighs any potential threat to the public's interest in competition: because the court's injunction is limited to a discrete set of facilities, defendant is not precluded from supplying bariatric products to the rest of its customers or to other facilities in the Agreement's territory. The court concludes that an injunction will not be inimical to the public welfare. See *Uarco, Inc.,* 584 F.Supp. at 1262 (D.Kan.1984) ("Clearly, the enforcement of valid contracts is in the public interest.").

IT IS, THEREFORE, BY THE COURT ORDERED that plaintiff's motion for preliminary injunction (Doc. 16) is granted.

IT IS FURTHER BY THE COURT ORDERED that, from the date of this Order until either the merits of this case are decided in the pending arbitration or November 1, 2000, whichever comes first, defendant and any party or parties in priv-

ity or acting in concert with defendant are enjoined from leasing any hospital beds, mattresses, support services, commodes, walkers, wheelchairs, lifts or transfer systems to any hospital or facility identified in Exhibit A attached hereto, if such products are specifically designed to be used by patients whose weight exceeds 350 pounds. Exhibit A shall remain under seal in order to keep the parties' customer list confidential.

IT IS FURTHER BY THE COURT ORDERED that, pursuant to the parties' stipulation (Doc. 27), before renting or offering to rent a "Novabed" to any facility specified in Exhibit A, defendant will inquire of the customer or prospective customer whether the patient for whom the "Novabed" is intended weighs more than 350 pounds. If the patient weighs more than 350 pounds, defendant will contact plaintiff and offer plaintiff the opportunity to supply one of its products for that application. If the customer, following such contact and consultation, still desires to rent a "Novabed," defendant may rent a "Novabed" to the customer without further obligation to plaintiff.

Copies of this order shall be mailed to counsel of record.

**IT IS SO ORDERED.**