HARTFORD HOUSE, LTD., a Colorado corporation, d/b/a Blue Mountain Arts, Susan Polis Schutz, and Stephen Schutz, Plaintiffs–Appellees,

v.

HALLMARK CARDS, INCORPORATED, a Missouri corporation, and Hallmark Marketing Corporation, Defendants–Appellants.

No. 86–2748.

United States Court of Appeals, Tenth Circuit.

May 24, 1988.

Robert J. Sisk, of counsel, of Hughes, Hubbard & Reed, New York City (John M. Townsend of Hughes, Hubbard & Reed, New York City, Andrea I. Williams, Thomas S. Nichols and Andrew M. Low of Davis, Graham & Stubbs, Denver Colo., and Barry M. Katz and M. Theresa Hupp of Hallmark Cards, Inc., Kansas City, Mo., with him on the briefs), for defendants-appellants.

Harry G. Melkonian of White & Case, Los Angeles, Cal. (James B. Hicks and Kathleen M. White of White & Case, Los Angeles, Cal., and Steve C. Briggs of Hutchinson, Black, Hill & Cook, Boulder, Colo., with him on the brief), for plaintiffs-appellees.

Before HOLLOWAY and McKAY, Circuit Judges, and BURCIAGA *, District Judge.

McKAY, Circuit Judge.

### I.

Plaintiffs, Susan Polis Schutz, Stephen Schutz, and Hartford House, Ltd., d/b/a Blue Mountain Arts (hereinafter collectively referred to as "Blue Mountain"), are in the greeting card business. Presently, Blue Mountain's two major lines of cards are entitled "AireBrush Feelings" and "WaterColor Feelings." These lines have been on the market since 1981 and 1983, respectively, and contain non-occasion emotional messages concerning love, personal relationships, and other similar subjects, superimposed on watercolor or airbrush artwork that generally has a landscape motif or nature theme.

Defendants, Hallmark Cards, Incorporated, and Hallmark Marketing Corporation (hereinafter collectively referred to as "Hallmark"), have produced and marketed greeting cards for more than seventy-five years. One of Hallmark's lines of cards is known as "Personal Touch," which, like Blue Mountain's cards, conveys emotional messages about personal relationships.

Blue Mountain brought this action against Hallmark, alleging that Hallmark's "Personal Touch" line of greeting cards, designed and distributed for sale beginning in April 1986, is deceptively and confusingly similar to Blue Mountain's "AireBrush Feelings" and "WaterColor Feelings" lines. Blue Mountain asserts that Hallmark has violated section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1982),[1] and is guilty of unfair competition and copyright infringement.

In the proceedings below, Blue Mountain sought a preliminary injunction to enjoin Hallmark from manufacturing and marketing its "Personal Touch" line during the pendency of this action. Pertinent to this request, Blue Mountain claimed that Hallmark's "Personal Touch" cards infringed the protected trade dress of Blue Mountain's "AireBrush Feelings" and "WaterColor Feelings" lines.

---

* Honorable Juan G. Burciaga, United States District Judge for the District of New Mexico, sitting by designation.

1. Section 43(a) provides in part:
   Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same ... shall be liable to a civil action ... by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

The district court studied the materials presented by the parties, held an evidentiary hearing, and made preliminary findings of facts and conclusions of law, reported at *Hartford House Ltd. v. Hallmark Cards Inc.*, 647 F.Supp. 1533 (D.Colo.1986). Among the district court's findings not challenged on this appeal are the following: Blue Mountain has been a successful leader in that part of the greeting card business aimed at expressing strong, non-occasion personal emotions. Hallmark was aware of the commercial success of Blue Mountain's cards and viewed Blue Mountain as a serious competitive threat. In early 1986, Hallmark mounted an intense effort to capture the emotionally expressive non-occasion greeting card market and designed and marketed its "Personal Touch" cards to appeal to the same type of consumers who purchase Blue Mountain's cards.

The district court also found that the "AireBrush Feelings" and "WaterColor Feelings" cards have an inherently distinctive and highly uniform overall appearance that is recognizable and attributable to Blue Mountain. According to the district court, some or all of the following features comprise that overall look:

1. A two-fold card containing poetry on the first and third pages.

2. Unprinted surfaces on the inside three panels.

3. A deckle edge on the right side of the first page.

4. A rough-edge stripe of color, or wide stripe, on the outside of the deckle edge of the first page.

5. A high-quality, uncoated, and textured art paper for the cards.

6. Florescent ink for some of the colors printed on the cards.

7. Lengthy poetry, written in free verse, typically with a personal message.

8. Appearance of hand-lettered calligraphy on the first and third pages with the first letter of the words often enlarged.

9. An illustration that wraps around the card and is spread over three pages, including the back of the card.

10. The look of the cards primarily characterized by backgrounds of soft colors done with air brush blends or light watercolor strokes, usually depicting simple contrasting foreground scenes superimposed in the background.

*Id.* at 1539.

The district court then analyzed the pertinent law and granted Blue Mountain's motion for preliminary injunction. Specifically, the district court ordered that Hallmark be "enjoined and restrained, pending a trial on the merits[,] from producing, manufacturing, marketing, advertising, promoting, offering for sale, selling or distributing" eighty-three "Personal Touch" cards. *Id.* at 1545. The district court then listed the eighty-three cards which were the subject of the injunction. Hallmark appeals the district court's grant of the preliminary injunction.

## II.

■ A district court may issue a preliminary injunction if the moving party establishes:

(1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest.

*Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir.1980). The scope of appellate review of a district court's discretionary grant of a preliminary injunction is narrow. Unless the district court abuses its discretion, commits an error of law, or is clearly erroneous in its preliminary factual findings, the appellate court may not set aside the injunction. *City of Chanute v. Kansas Gas & Electric Co.*, 754 F.2d 310, 312 (10th Cir. 1985); *Kenai Oil & Gas, Inc. v. Department of the Interior*, 671 F.2d 383, 385

(10th Cir.1982); *Otero Savings & Loan Association v. Federal Reserve Bank*, 665 F.2d 275, 276 (10th Cir.1981). "The merits ... may be considered on appeal only insofar as they bear on the issue of judicial discretion." *Otero*, 665 F.2d at 276–77.

On this appeal Hallmark does not challenge the district court's findings that Blue Mountain will suffer irreparable injury unless the preliminary injunction issues, that the threatened injury to Blue Mountain outweighs whatever damage the injunction may cause Hallmark, and that the preliminary injunction would not be adverse to the public interest. Rather, Hallmark's appeal pertains to the district court's finding that Blue Mountain has established a substantial likelihood that it will eventually prevail on the merits of its trade dress infringement claim under the Lanham Act.[2]

### III.

A federal cause of action for unprivileged imitation, including trade dress infringement, is available under section 43(a) of the Lanham Act. *Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 516–17 (10th Cir.1987); *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 980 (11th Cir. 1983). "Although historically trade dress infringement consisted of copying a product's packaging, ... 'trade dress' in its more modern sense [may] refer to the appearance of the [product] itself...." *Brunswick*, 832 F.2d at 517 (quoting *American Greetings Corp. v. Dan–Dee Imports, Inc.*, 807 F.2d 1136, 1140–41 (3d Cir.1986)); *LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 75 (2d Cir.1985).

Trade dress is a complex composite of features. One may be size, another may be color or color combinations, another may be texture, another may be graphics and arrangement and so on. Trade dress is a term reflecting the overall general impact, usually visual, but sometimes also tactile, of all these features taken together.

*SK & F Co. v. Premo Pharmaceutical Laboratories, Inc.*, 481 F.Supp. 1184, 1187 (D.N.J.1979), *aff'd*, 625 F.2d 1055 (3d Cir. 1980); *accord Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 841 (9th Cir.1987) (total visual image); *Clarke Checks*, 711 F.2d at 980; *Harlequin Enterprises Ltd. v. Gulf & Western Corp.*, 503 F.Supp. 647, 648–49 (S.D.N.Y.1980) (product design and format, words, symbols, collection of colors and designs). The district court described Blue Mountain's trade dress as a combination of some or all of ten features listed above, which produces an overall uniform look and distinctive appearance of Blue Mountain's "AireBrush Feelings" and "WaterColor Feelings" lines of cards.

A product's trade dress is eligible for protection under section 43(a) if it is so distinctive as to become, in effect, an unregistered trademark. *Brunswick*, 832 F.2d at 516–17. For a plaintiff to establish unprivileged imitation, prevail on a trade dress infringement claim, and thus prevent copying of the appearance of a product, (1) the trade dress, whether a single feature or a combination of features, must be nonfunctional; (2) the trade dress must have acquired a secondary meaning; and (3) there must be a likelihood of confusion among consumers as to the source of the competing products.[3] *Brunswick*, 832 F.2d at 517.

---

**2.** In *Otero*, 665 F.2d at 278, this court stated that the Tenth Circuit has adopted the liberal definition of the "probability of success" requirement. "When the other three requirements for a preliminary injunction are satisfied, 'it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation.'" *Id.* (quoting *Continental Oil Co. v. Frontier Refining Co.*, 338 F.2d 780, 782 (10th Cir.1964)). In view of the district court's determination that Blue Mountain demonstrated a substantial likelihood of success on the merits of its trade dress infringement claim under the Lanham Act and in view of our holding in this case, it is unnecessary to address Blue Mountain's argument that it can resort to *Otero* and establish that prong of the requirements for a preliminary injunction.

**3.** As *Brunswick*, 832 F.2d at 520, makes clear, if a plaintiff can show that its trade dress has acquired a secondary meaning and there is a likelihood of confusion, the trade dress is protected under section 43(a) unless the defendant can show that plaintiff's trade dress is function-

In considering the merits of Blue Mountain's trade dress infringement claim for purposes of determining Blue Mountain's likelihood of success on the merits, the district court determined that the overall appearance or arrangement of features, i.e., the trade dress, of Blue Mountain's "AireBrush Feelings" and "WaterColor Feelings" lines of greeting cards was nonfunctional and had acquired a secondary meaning. The district court further determined that there was a likelihood of confusion among card purchasers as to the source of Blue Mountain's two lines and Hallmark's "Personal Touch" line. On this appeal Hallmark does not challenge the district court's preliminary determinations pertaining to secondary meaning and likelihood of confusion. Rather, Hallmark challenges the district court's determination that Blue Mountain's trade dress is nonfunctional. Consequently, our decision is limited to the resolution of the functionality issue.

### IV.

Recently, in *Brunswick*, 832 F.2d at 519 (quoting *Sno–Wizard Manufacturing, Inc. v. Eisemann Products Co.*, 791 F.2d 423, 426 n. 3 (5th Cir.1986)), this court enunciated the test for determining functionality: "Whether the feature is functional should turn on 'whether the protection of the [feature] would hinder competition or impinge upon the rights of others to compete effectively in the sale of goods.'"

■ It should be noted that the protected trade dress in *Brunswick* was a single feature: the distinctive cone-shaped front cover of a fishing reel. *Id.* at 517 n. 2, 520. As indicated above, a trade dress may be a composite of several features in a certain arrangement or combination which produces an overall distinctive appearance. In this context, the question is whether the combination of features comprising the trade dress is functional. As the district court correctly stated, "[t]he creation and arrangement of individual product features into a particular overall design may itself constitute a non-functional product fea-

ture." *Hartford House*, 647 F.Supp. at 1539. A combination of features may be nonfunctional and thus protectable, even though the combination includes functional features. *See, e.g., Fuddruckers*, 826 F.2d at 842 ("functional elements that are separately unprotectable can be protected together as part of a trade dress"); *American Greetings*, 807 F.2d at 1143; *Clarke Checks*, 711 F.2d at 983–84; *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 203–04 (2d Cir. 1979) (particular combination of colors and collocation of decorations of cheerleading uniform). "Indeed, virtually every product is a combination of functional and non-functional features and a rule denying protection to any combination of features including a functional one would emasculate the law of trade dress infringement." *American Greetings*, 807 F.2d at 1143. Contrary to Hallmark's contention, the appropriate inquiry is not whether each individual feature of the trade dress is functional but whether the whole collection of features, taken together, is functional. *Fuddruckers*, 826 F.2d at 842 (combination of visual features that creates a distinctive visual impression is protectable); *Ambrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1538 n. 25 (11th Cir.1986), *cert. denied*, ⸺ U.S. ⸺, 107 S.Ct. 1983, 95 L.Ed. 822 (1987); *SK & F Co.*, 481 F.Supp. at 1187 ("The law of unfair competition in respect to trade dress requires that all of the features be considered together, not separately."). As the court stated in *LeSportsac*, 754 F.2d at 76, "by breaking LeSportsac's trade dress into individual elements and then attacking certain of those elements as functional, K Mart misconceives the scope of the appropriate inquiry.... [LeSportsac] claims as its mark the particular combination and arrangement of design elements that identify its bags and distinguish them from other bags." The district court in this case correctly stated: "Defendants contend that the individual cards must be dissected and each feature analyzed separately for functionality. I reject that approach as alien to

---

al. The burden of proof of functionality is on     the defendant.

the policies of the Lanham Act." *Hartford House*, 647 F.Supp. at 1539.

■ When the *Brunswick* test is applied to a combination of features, the issue of functionality turns on whether protection of the *combination* would hinder competition or impinge upon the rights of others to compete effectively. The *Brunswick* test is explained further:

[W]e think [this test] affords better protection to ensure that we do not discourage the "use of a spark of originality which could transform an ordinary product into one of grace." Under our test, the claim may still be made that without a particular identifying design or feature [or combination of features,] a second-comer may be less effectively able to compete. If that feature [or combination of features] must be slavishly copied in order to have an equally functional product, then the feature [or combination] is not entitled to protection. But if the feature [or combination of features] enables the second-comer simply to market his product more effectively, it is entitled to protection.

This interpretation does not limit functional features to those essential to a product's operation. Because a function of certain products is aesthetic appeal, a feature intrinsic to the aesthetic appeal of those products may not be entitled to trademark protection. Although the determination of functional in this setting may be difficult, *the decision should nevertheless rest on whether alternative appealing designs or presentations of the product can be developed.*

*Brunswick*, 832 F.2d at 519 (citations omitted) (emphasis added).

Inasmuch as *Brunswick* was decided by this court after the district court granted the preliminary injunction in this case, the district court did not have the benefit of *Brunswick* when it analyzed the law applicable to functionality. Even so, the district court properly stated and applied the test subsequently enunciated in *Brunswick*. *See Hartford House*, 647 F.Supp. at 1540. Although the district court focused on an analysis of utilitarianism, and the *Bruns-*

*wick* decision makes clear that functional features are not limited to those essential to a product's operation, the district court's overall analysis of the law and the facts of this case in arriving at its conclusion is aligned with *Brunswick* and addresses the concerns stated in that case.

■ Most importantly, the district court properly noted that the availability of alternative appealing designs is a key factor in determining that a trade dress is nonfunctional. *Hartford House*, 647 F.Supp. at 1540. In this respect, the district court correctly stated that "[s]ince the effect upon competition 'is really the crux of the matter,' it is of course significant that there are other alternatives available." *Id.* (quoting *In re Morton–Norwich Products, Inc.*, 671 F.2d 1332, 1341 (C.C.P.A.1982)).

■ The district court focused on the design features of emotionally expressive non-occasion greeting cards and determined that alternative designs could be developed by Hallmark. In this regard, the district court stated:

Further evidence that the features developed by [Blue Mountain] are nonfunctional are the infinite alternative designs available to [Hallmark]. Introduced into evidence were cards of the "highly emotional non-occasion" genre, manufactured by Hallmark and [Blue Mountain's] other competitors, with varying features quite different from [Blue Mountain's] trade dress. This is not a case where there are a limited number of designs available, thus mandating a finding of functionality.

*Id.* Indeed, the evidence satisfied the district court that "it would not be difficult for Hallmark to devise distinguishing features for its ['Personal Touch'] line. Hallmark tested five different potential 'looks' for the ['Personal Touch'] line." *Id.* Hallmark, however, chose "a look so similar to Blue Mountain's that it [was] nearly impossible to differentiate between the respective card lines." *Id.* Additionally, a competitor of both Hallmark and Blue Mountain, whose testimony the district court found to be "quite credible," indicated that "there is room for innovation and profit in

the emotional non-occasion greeting card market without duplicating or copying another's products." *Id.* The district court concluded, therefore, that "many design alternatives are available. There is no necessity to simulate Blue Mountain's trade dress." *Id.* Indeed, "[a]n emotional non-occasion greeting card can be folded, colored, shaped, cut, edged, and designed in infinite ways and still function to send its message." *Id.* at 1541. In light of the available alternatives, the district court further concluded that allowing Blue Mountain to exclude others from using its trade dress "will not hinder competition nor will it interfere with the rights of others to compete." *Id.* at 1540. Consequently, the district court found that the overall appearance, i.e., trade dress, of Blue Mountain's cards was nonfunctional. In the district court's words: "Paper, verse and ink are functional features of a greeting card. The design and amalgamation of those features in a uniform fashion with other features, however, has produced the non-functional Blue Mountain 'look'." *Id.*

Based on the record as it now stands, we are convinced that the district court was not clearly erroneous in finding that it is feasible for Hallmark to avoid the potential for confusion and compete effectively without having to slavishly copy or imitate the distinctive combination of features comprising Blue Mountain's trade dress. Consequently, the district court's finding that Blue Mountain's trade dress is nonfunctional, *id.* at 1541, is also not clearly erroneous. Indeed, we are not "left with the definite and firm conviction that a mistake has been committed." *Brunswick,* 832 F.2d at 520.

■ None of Hallmark's arguments on appeal suggest that the district court erred or abused its discretion in granting the preliminary injunction. First, Hallmark

contends that the district court erred in relying on the trade dress theory. We agree with the district court that the overall appearance of Blue Mountain's "Aire-Brush Feelings" and "WaterColor Feelings" cards constitutes a trade dress. The district court properly relied on the law dealing with trade dress infringement. Contrary to Hallmark's contention, Blue Mountain has not been granted exclusive rights in an artistic style [4] or in some concept, idea, or theme of expression. Rather, it is Blue Mountain's specific artistic expression, in combination with other features to produce an overall Blue Mountain look, that is being protected. This protection does not extend the protection available under trademark law and does not conflict with the policy of copyright law.

Second, Hallmark contends that the district court applied the wrong legal standards for determining functionality. Specifically, Hallmark contends that the district court erred by misinterpreting the test for determining whether a trade dress is functional and by refusing to consider the functionality of each feature comprising Blue Mountain's trade dress. As discussed above, however, the district court applied legal standards which generally comport with the test announced in *Brunswick.* Additionally, it was unnecessary for the district court to perform a feature-by-feature functionality analysis. The trade dress in this case is a certain arrangement or combination of features which creates the overall uniform appearance, look, and image of Blue Mountain's two major lines of greeting cards. The district court preliminarily determined that this trade dress is nonfunctional and thus protectable under section 43(a). Hallmark is therefore precluded from copying or imitating this overall appearance or look. This is the extent of the preliminary injunction.[5] Hallmark is

---

**4.** Contrary to Hallmark's position and numerous assertions, the Blue Mountain "look" does not merely refer to Blue Mountain's artwork, one of the many features comprising the overall appearance of Blue Mountain's cards, or to some artistic style. Rather, the protected "look" referred to by the district court is the overall appearance of the cards, i.e., the trade dress. Although the district court or witnesses may

have used the word "look" in defining one of the features of Blue Mountain's trade dress or in referring to the artwork itself, those references do not limit the district court's general use of the word "look" to mean the cards' overall uniform appearance, comprised of some or all of the features listed by the court.

**5.** Indeed, the preliminary injunction in this case is specifically limited to 83 specific Hallmark

free to utilize the individual features comprising the protected trade dress (unless the district court specifically determines that an individual feature is nonfunctional),[6] to produce emotionally expressive non-occasion greeting cards, and to compete with Blue Mountain. However, Hallmark must select and incorporate alternative features to avoid the potential for confusion, or alter, vary, and rearrange the features in such a way as not to produce a card with an overall appearance that is confusingly similar to the protected overall appearance of Blue Mountain's "AireBrush Feelings" and "WaterColor Feelings" cards. Contrary to Hallmark's assertions and its reliance on *American Greetings*, 807 F.2d at 1144, and *Stormy Clime Ltd. v. ProGroup, Inc.*, 809 F.2d 971, 978 (2d Cir. 1987), the district court considered whether alternative designs were available which would avoid the potential for confusion and determined that Hallmark could feasibly produce emotionally expressive non-occasion greeting cards and effectively compete with Blue Mountain without imitating Blue Mountain's overall look. These findings are not clearly erroneous. Inasmuch as the district court specifically listed the combination of features that comprise Blue Mountain's protected trade dress, Hallmark is guided as to what features combined may create a confusingly similar product.

Third, Hallmark contends that the district court erred in including a functional core concept in the definition of Blue Mountain's trade dress. We disagree with Hallmark's description of the core concept of emotionally expressive non-occasion greeting cards. Although text and artwork, in general, may be functional core concepts, the features detailing the type of text and artwork that is a part of Blue Mountain's trade dress are not core concepts. Unlike the injunction in *Prufrock Ltd. v. Lasater*, 781 F.2d 129, 131 (8th Cir.1986), the preliminary injunction in this case simply does not grant to Blue Mountain the exclusive right to the concept of emotionally expressive non-occasion greeting cards or to a trade dress creating that concept. Moreover, as discussed above, what is protected in this case is the overall appearance of Blue Mountain's cards, not the individual features that make up that overall appearance when those features are arranged, altered, and combined with other features so as to avoid potential confusion.

### V.

Based on our review of the relevant law and the record presently before us, we conclude that the district court was correct in determining preliminarily that the combination of the features comprising the trade dress, i.e., the overall appearance or look, of Blue Mountain's "AireBrush Feelings" and "WaterColor Feelings" cards is non-functional and thus protectable under section 43(a) of the Lanham Act. Inasmuch as Blue Mountain established a substantial likelihood that it will eventually prevail on the merits of its trade dress infringement claim under section 43(a), the district court did not abuse its discretion in preliminarily enjoining Hallmark from producing, manufacturing, marketing, advertising, promoting, offering for sale, selling, or distributing eighty-three specific "Personal Touch" cards which incorporate some or all of the ten described features constituting Blue Mountain's trade dress in a manner likely to cause consumer confusion as to the source of the cards.

Accordingly, the district court's grant of preliminary injunction is AFFIRMED.

"Personal Touch" cards which, according to the district court, incorporate some or all of the features comprising Blue Mountain's protected trade dress in a manner likely to cause confusion.

**6.** Although the district court did not analyze functionality on a feature-by-feature basis, the court did find that paper, ink, and verse are functional features of emotionally expressive non-occasion greeting cards. This finding is not clearly erroneous.