944 F.2d 911
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 liver Benjamin GERRISH, Plaintiff-Appellant,
v.
Fred HURST, Capt. Tom Bona, Gary Deland, Gerald Cook, David
Franchina, T.A. Begar, George Strong, Paulette
Nance, Defendants-Appellees.
 Nos. 90-4206, 90-4207.
 United States Court of Appeals,
Tenth Circuit.
 Sept. 10, 1991.
 
 Before McKAY, SEYMOUR and EBEL, Circuit Judges.
 ORDER AND JUDGMENT*
 EBEL, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. Therefore, the case is ordered submitted without oral argument.
 
 
 2
 This case involves an appeal and cross-appeal from the district court's granting of summary judgment and injunctive relief. We affirm the granting of summary judgment for defendants and reverse the injunction.
 
 FACTS
 
 3
 Appellant Oliver Benjamin Gerrish, Jr., is an inmate at the Utah State Prison in Draper, Utah. In November, 1985, Utah State Prison officials allowed appellant to purchase a 13-inch black-and-white television set with his own funds and further allowed him to retain the television for his personal use in his cell at the prison. Appellant was also allowed to purchase a radio from the prison commissary, which he also was allowed to retain in his cell for his personal use.
 
 
 4
 In September of 1988, approximately three years after plaintiff was allowed to purchase the television and radio, prison officials announced a new policy governing the possession and use of televisions and radios in prisoners' cells. The new policy required all inmates to dispose of their televisions and radios by December 31, 1988, after which they would be defined as contraband, confiscated by prison officials, and ultimately donated to charitable organizations. The new prison policy gave prisoners the option of disposing of excess property in one of three ways. The inmate could choose to send the property to an address specified by the inmate, release the property to a specified visitor, or donate the property to a charitable organization of the inmate's choice. The regulations gave inmates 30 days to dispose of their confiscated property. In addition, inmates were offered the option of leasing a prison-owned television.
 
 
 5
 Appellant made no arrangements for the disposition of his personal property, and in January of 1989, the prison confiscated his television and radio. On September 12, 1989, appellant filed suit against prison officials alleging that they had violated his constitutional rights by taking his property without just compensation and in violation of his right to due process. Appellant sought: (1) declaratory relief that the prison policy of confiscating inmate owned televisions and radios is unconstitutional; (2) a permanent injunction enjoining the prison from disposing of plaintiff's property and requiring defendants to safely store the property until returned to plaintiff; (3) a return of the radio and television in question, or just compensation; and (4) consequential and punitive damages.
 
 
 6
 In evaluating the prison policy, the district court parsed the prison regulations into two component parts: confiscation of the property and disposal of the property. With regard to the confiscation of the television and radio, the district court found that appellant had "failed to identify any constitutional defect in the promulgation and implementation of the new prison audio/visual regulations." Mem.Op. and Order at 11. The court accordingly granted summary judgment in favor of the prison officials. Id. However, with regard to the disposal of appellant's property, the district court concluded that "the prison should ... provide reasonable assistance in the disposal of the property in a reasonable way." Id. at 15. Citing the prison's "duty to avoid waste or the unnecessary loss of inmate's personal property," id. at 12, the district court enjoined the prison officials from disposing of appellant's television and radio until such time as appellant was afforded the opportunity to transfer his property to a friend or relative, donate the property to a friend or charitable organization of his own choosing, or sell his property "within a reasonable time (60-90 days) in a commercially reasonable manner with a reasonable amount of assistance from prison personnel (such as securing bids from local used appliance purchasers)." Injunction and Judgment at 2. Both appellant and the prison officials now appeal the district court's ruling.
 
 SUMMARY JUDGMENT
 
 7
 When reviewing the district court's granting of summary judgment, an appellate court is obliged to apply the same standard as was applied by the district court. Thus, summary judgment will be upheld only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). We find that the district court properly granted summary judgment in favor of the prison officials.
 
 
 8
 As the Supreme Court noted in Turner v. Safley, 482 U.S. 78, 89 (1987), "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." In considering a challenged prison regulation, a court should look to the following four factors:
 
 
 9
 First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it.... A second factor ... is whether there are alternative means of exercising the right that remain open to prison inmates.... A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally.... Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation.
 
 
 10
 Id. at 89-90.
 
 We agree with the district court that:
 
 11
 Prison officials have a legitimate interest in restricting the possession and use of privately owned radios and televisions in prison cells. Such restrictions may reduce the number of conflicts over the ownership of private property, reduce the likelihood that inmates will convert electronic devices into weapons or devices for escape, limit the ability of inmates to conceal contraband within the devices and facilitate the orderly administration of the prison. By allowing only prison owned and maintained televisions in prison cells, the prison is able to ensure the proper maintenance of the device to reduce the likelihood of personal or or property injury through malfunction of a damaged or otherwise unsafe appliance. Finally, the connection between the new regulations and these legitimate objectives is sufficiently close to refute any argument that the new regulations are arbitrary and irrational.
 
 
 12
 Mem Op. and Order at 11. We therefore think it was appropriate for the district court to grant summary judgment on behalf of the prison officials.[1]
 
 
 13
 However, we note that the granting of summary judgment was limited to the confiscation of prisoner's property. Since the prison officials had not yet attempted to dispose of the property--the television and radio were being stored in prison storage facilities pending the disposition of this case--the district court had no occasion to pass on the reasonableness of the disposal component of the Utah prison regulation. The district court considered this aspect of the regulation only when it ruled on appellant's claim for injunctive relief.
 
 INJUNCTION
 
 14
 The district court rejected appellant's assertion that the prison should be required to store his property until his release, concluding that "[s]tate prison facilities were never intended to be used as warehouses for the personal property of those incarcerated at the prison." Mem.Op. and Order at 14. However, the district court implicitly concluded that the prison policy for disposing of such confiscated property was not reasonable, at least insofar as it related to prisoners--like appellant--who had "acquired and retained the television and radio with the permission and assistance of prison officials." Id. at 15. The district court, in effect, ruled that due process required prison officials to "give the prisoner reasonable assistance under the circumstances in allowing the prisoner to offer [his property] for sale to used appliance dealers for a period of time." Id. at 16. Thus, the district court enjoined the prison officials "from disposing of appellant's property as presently contemplated." Id.
 
 
 15
 The scope of appellate review of a district court's discretionary grant of an injunction is narrow. Unless the district court abuses its discretion, commits an error of law, or is clearly erroneous in its factual findings, the appellate court may not set aside the injunction. Hartford House, Ltd. v. Hallmark Cards, Inc., 846 F.2d 1268, 1270 (10th Cir.1988); City of Chanute v. Kansas Gas & Electric Co., 754 F.2d 310, 312 (10th Cir.1985); Otero Savings & Loan Ass'n v. Fed. Reserve Bank, 665 F.2d 275, 276 (10th Cir.1981). We think it was an error of law for the district court to conclude that the prison regulations were unreasonable insofar as they related to the disposal of this appellant's property. Applying the Turner standard to this aspect of the prison policy, we think it clear that the prison's policy for disposing of inmate televisions and radios was "reasonably related to legitimate penological interests." 482 U.S. at 89. Moreover, we note that the Utah policy is remarkably similar to the policies espoused by other states and the federal Bureau of Prisons.[2] Since there is insufficient evidence in the record to establish that 30 days is an inadequate amount of time for this inmate to arrange for the disposal of his disallowed property, and since this record does not establish that this inmate is unable reasonably to dispose of his disallowed property without the assistance of the prison authorities, we VACATE the injunction against the prison officials. Appellees shall, however, allow appellant an additional 30 days from the date of this order to dispose of his disallowed property before they dispose of it.
 
 CONCLUSION
 
 16
 We AFFIRM the district court's granting of summary judgment for the prison officials. However, we REVERSE the district court on the imposition of injunctive relief.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Appellant additionally invokes the equal protection clause in maintaining that "defendants' policy was arbitrarily applied to [appellant] only"--he attaches several affidavits for the proposition that "[o]ther inmates' personal TVs/radios were not seized." App.Opening Br. at 2. However, this equal protection claim was not raised in the district court below. See R.Vo. I, Doc. 64, Second Amended Complaint. Since we will not consider issues raised for the first time on appeal, Gillihan v. Shillinger, 872 F.2d 935, 938 (10th Cir.1989), we decline to address this issue here. We therefore affirm the district court in granting summary judgment
 
 
 [2]
 According to 28 C.F.R. § 553.13(b)(iii) (Procedures for handling contraband):
 If the inmate establishes ownership [of property], but the item is identified as contraband, [prison] staff shall mail such items ..., at the inmate's expense, to a destination of the inmate's choice. Where the inmate has established ownership of a contraband item, but is unwilling, although financially able to pay, or refuses to provide a mailing address for return of the property, the property is to be disposed of through approved methods, including destruction of the property.