Joe SHUMWAY, Joe Shumway as next friend for Samuel Shumway, James Hollon, James Hollon and Jane Hollon as next friends for Annie Hollon, Jerry Johnson, Jerry Johnson as next friend for Chariti Johnson, Duane King, and Katrina King, Plaintiffs,

v.

The ALBANY COUNTY SCHOOL DISTRICT NO. ONE BOARD OF EDUCATION, Head, Superintendent, Albany County School District No. One and Charles Ksir, Jim Kyritsis, Randy Anderson, Susan McCormack, Cheryl Schroeder, Mary Burman, Debbie Emerson, Robin Kempert, and Clarence Unruh, members of Albany County School District No. One Board of Education, Defendants.

No. 93–CV–0153J.

United States District Court, D. Wyoming.

June 9, 1993.

Frederic C. Reed, Cheyenne, WY, Tracy L. Winn, Nat. Legal Foundation, Virginia Beach, VI, for plaintiffs.

Yvonne Wade Nagel, Horace M. MacMillan, II, Becky N. Klemt, Paul D. Schierer, Pence & MacMillan, Laramie, WY, for defendants.

## MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION

ALAN B. JOHNSON, Chief Judge.

The plaintiffs' Motion for Preliminary Injunction came on for hearing on May 25, 1993. The Court, having considered the motion and the opposition filed thereto, the arguments of counsel, and being fully advised in the premises, FINDS and ORDERS as follows:

## Background

The complaint filed by the plaintiffs in this case asserts claims for violation of plaintiffs' civil rights by the Albany County School District No. One Board of Education, pursuant to 42 U.S.C. § 1983.[1] Plaintiffs seek declaratory and injunctive relief against the Board's discriminatory exclusion of a group of graduating seniors and parents of graduating seniors of Laramie High School from public facilities, contrary to the Board's policy of free and open access providing for the use of such facilities by the public. Plaintiffs allege the Board refused to permit a group of parents and graduating seniors to rent the Laramie High gymnasium for a baccalaureate ceremony on May 27, 1993. The baccalaureate ceremony to be held by plaintiffs was to be privately sponsored, open to the public and completely unrelated to any school or state activities. Participation in the baccalaureate ceremony by graduating students was to be completely voluntary.

Plaintiffs contend they were given verbal approval to use the high school gymnasium for their privately sponsored baccalaureate ceremony. The record before the Court also reflects that a facility use request, dated February 4, 1993, for use of the gymnasium was prepared by the assistant principal at Laramie High School. Plaintiffs' Exhibit 3. After receiving verbal authorization for use of the gymnasium, senior class officers contacted Jostens, the company printing the graduation announcements for 1993, to add the baccalaureate ceremony to the graduation announcement, advising of the place, date and time for the baccalaureate ceremony. The addition to the graduation announcement also stated that the baccalaureate ceremony was "sponsored by the community." No separate announcement was prepared for the baccalaureate ceremony.

Subsequently, the Board decided not to rent the gymnasium to the group requesting its use for the baccalaureate ceremony. The Board's decision was based upon an informal letter opinion, dated March 22, 1993, prepared by the Wyoming Attorney General's office and directed to the Wyoming Superintendent of Public Instruction. It appears that letter opinion had been made available to school boards around the state of Wyoming.

The Attorney General letter opinion responded to the following three questions in the negative:

1. May one or more prayers be offered at graduation ceremonies?

2. May schools participate in providing baccalaureate services?

3. May school facilities be rented to some group or association which will conduct the baccalaureate services?

The authoring senior assistant attorney general cited *Lee v. Weisman*, —— U.S. ——, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992), as primary authority for her conclusions.

On April 1, 1993 the Board's attorney, Hoke MacMillan, wrote to Dr. Head, Superintendent of Schools for Albany County School District No. 1, regarding the March 22, 1993 Attorney General opinion. On that same day, students requested that the baccalaureate issue be placed on the School Board's agenda for the next Board meeting. On April 28, 1993, at the Board's meeting, a petition signed by a number of individuals was presented to the Board by the Laramie Graduation Association. The petitioners again requested to rent the LHS Gymnasium for their 1993 baccalaureate service. At the meeting, the Board determined that it could not rent the gymnasium based upon the Wyoming Attorney General's opinion as well as the recommendation of the Board's attorney. The decision not to rent the gymnasium to the group for baccalaureate was confirmed by the Board with a letter dated April 30, 1993 to Paula Trujillo, Senior Class President, signed by Dr. Charles Ksir, President of the Board of Education.

On May 12, 1993, Dr. Head was sent a letter (via facsimile transmission) by the National Legal Foundation, acting at the request of a committee of parents and graduating seniors. That letter urged the Board to

---

1. All defendants will be referred to collectively as the "Board" throughout this Order unless otherwise noted or specifically stated.

reconsider and reverse its decision not to rent the gymnasium to the baccalaureate group. The Board did not reverse its decision, and this suit was subsequently filed on May 20, 1993. The group sponsoring the baccalaureate service did make alternative arrangements for holding the baccalaureate service, in the event they were unable to use the LHS gymnasium. The plaintiffs' preference was, however, to hold the baccalaureate service in the gymnasium, rather than in their alternate site, the Arts and Sciences auditorium on the University of Wyoming campus in Laramie, Wyoming. Plainly, the baccalaureate service would take place on May 27, 1993 in one location or the other, regardless of the outcome of the instant litigation.

Plaintiffs' complaint asserts claims against the defendants for various violations of the United States Constitution, including the first and fourteenth amendment protections of their rights of free speech, assembly, free exercise of religion and equal protection under the law. At the hearing on the preliminary injunction, it was demonstrated that the Board's policy with respect to the use of school facilities was one of equal access to all community groups prior to the time of plaintiffs' request for use of the Laramie High gymnasium. School facilities in Albany County had been made available in the past to a wide variety of groups in the community.[2] As is apparent, the community has been encouraged to make use of school district facilities for many different purposes.

Plaintiffs reason that, once the Board had made public school facilities such as the gymnasium available for indiscriminate use by the general public, so long as that use did not interfere with the school's educational program, the gymnasium became a designated public forum. Plaintiffs argue that the Board cannot exclude otherwise eligible individuals or groups from such a designated public forum unless there is a compelling state interest or reason for the state's content-based exclusions from the use of that forum.

The Board has responded to the plaintiffs' assertions by arguing that the Board has a legitimate interest in avoiding an Establishment Clause violation. The Board also argues that the plaintiffs failed to show any irreparable harm if their baccalaureate service was not permitted to be held at the gymnasium, because alternative arrangements had been made to hold the service elsewhere if plaintiffs were unable to secure the use of the gymnasium. The Board argues that the dictates of *Lee v. Weisman,* —— U.S. ——, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992), require the Board to avoid the perception of a state created orthodoxy and that it must avoid any activity which bears the imprint of a state established religion.

The Board also questioned whether student participation in the baccalaureate service was truly voluntary. The Board noted in its presentation at the hearing that many indicia of state involvement in the baccalaureate ceremony were present. These indicia included the graduation announcement itself, participation of the school orchestra and choir in the ceremony, a letter from the school principal to students and parents containing information regarding the baccalaureate ceremony, and the fact that nearly seventy five percent of the students were expected to attend the baccalaureate service. The Board contends this large number of participating graduating students was of such a magnitude that it was dubious whether participation was meaningfully voluntary. The Board also alleged that teachers had required students in the orchestra and choir to participate in baccalaureate, under penalty of a failing grade if the student did not do so, assertions which are contested by plaintiffs. The totality of these factors, the Board argues, indicates that the only way that state

2. At the hearing, Plaintiffs offered a compilation of users of Albany County School District facilities which included Burman Motors Basketball, Chip Hathaway (used repeatedly for "Lockharts Service"), Alpha Zeta Club "Panel on Public Land Management", Wyoming Technical Institute, Banner Associates, Susan Shumway, Snowy Range Dist. Pinewood Derby Scout Show '93, Big Laramie Valley Vol. Fire Dept., Tim McGary, Bethel Baptist, Laramie Girl Scouts, Spiegelberg, Shell Burns, Young Miss, University of Wyoming Elizabethan Faire Feaste, Worldwide Church of God, Laramie Seventh Day Adventist, Paralyzed Veteran's Magic Show; Berean Baptist Church Volleyball, Mountain Cement Co., Mrs. Wyoming Pageant. *See* Plaintiffs' Exhibit 3.

sponsorship or endorsement of religion can be avoided is by requiring the baccalaureate service to be held in some location other than Laramie High gymnasium.

### Standard for Preliminary Injunction

A movant seeking issuance of a preliminary injunction in the Tenth Circuit must demonstrate:

> (1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest.

*Hartford House, Ltd. v. Hallmark Cards, Inc.,* 846 F.2d 1268, 1270 (10th Cir.1988), *cert. denied,* 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988) (citing *Lundgrin v. Claytor,* 619 F.2d 61, 63 (10th Cir.1980)). When the last three requirements are met, a movant may satisfy the likelihood of success on the merits requirement by raising serious questions going to the merits. *Tri–State Generation v. Shoshone River Power, Inc.,* 805 F.2d 351 (10th Cir.1986) (citing *Otero Savings & Loan Association v. Federal Reserve Bank,* 665 F.2d 275, 278 (10th Cir. 1981)).

### Discussion

■ Courts today are fortunate because there are abundant scholarly and judicial writings addressing the issues now confronting this Court. The United States Supreme Court has long decreed that the separation of church and state is a fundamental tenet of our federal Constitution. Within the context of the public school, the Supreme Court has made it clear that the obligation of the State is to be faithful to the ideal of secular instruction and political neutrality and that the State must refrain from any ideological coercion. *West Virginia State Bd. of Educ. v. Barnette,* 319 U.S. 624, 637, 63 S.Ct. 1178, 1185, 87 L.Ed. 1628 (1943).

> If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein.

*Id.* at 642, 63 S.Ct. at 1187. Boards of education have "important, delicate, and highly discretionary functions, but none that they may not perform within the limits of the Bill of Rights." *Id.* at 637, 63 S.Ct. at 1185.

■ It is against this historical background that the Albany County School District No. One Board of Education was compelled to decide whether rental of the Laramie High gymnasium for a privately sponsored baccalaureate service would be proper. Relying upon advice of the Wyoming Attorney General regarding the application of *Lee v. Weisman,* —— U.S. ——, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992), the Board determined that such rental would be prohibited.

In *Lee v. Weisman,* —— U.S. ——, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992), the Supreme Court considered the propriety of invocations and benedictions at school graduations. The Court placed its decision within the past context of first amendment jurisprudence protecting speech and religion.

> Speech is protected by insuring its full expression even when the government participates, for the very object of some of our most important speech is to persuade the government to adopt an idea as its own.... The method for protecting freedom of worship and freedom of conscience in religious matters is quite the reverse. In religious debate or expression the government is not a prime participant, for the Framers deemed religious establishment antithetical to the freedom of all. The Free Exercise Clause embraces a freedom of conscience and worship that has close parallels in the speech provisions of the First Amendment, but the Establishment Clause is a specific prohibition on forms of state intervention in religious affairs with no precise counterpart in the speech provisions.... The explanation lies in the lesson of history that was and is the inspiration for the Establishment Clause, the lesson that in the hands of government what might begin as a tolerant expression of

religious views may end in a policy to indoctrinate and coerce. A state-created orthodoxy puts at grave risk that freedom of belief and conscience which are the sole assurance that religious faith is real, not imposed.

The lessons of the First Amendment are as urgent in the modern world as in the 18th Century when it was written. One timeless lesson is that if citizens are subjected to state-sponsored religious exercises, the State disavows its own duty to guard and respect the sphere of inviolable conscience and belief which is the mark of a free people. To compromise that principle today would be to deny our own tradition and forfeit our standing to urge others to secure the protections of that tradition for themselves.

*Lee v. Weisman,* —— U.S. at ——–——, 112 S.Ct. at 2657–2658 (citations omitted).

The Court stated that the "school district's supervision and control of a high school graduation ceremony places public pressure, as well as peer pressure, on attending students to stand as a group or, at least, maintain respectful silence during the Invocation and Benediction. This pressure, though subtle and indirect, can be as real as any overt compulsion." *Id.* —— U.S. at ——, 112 S.Ct. at 2658. "The State may not, consistent with the Establishment Clause, place primary and secondary school children in this position." *Id.* —— U.S. at ——, 112 S.Ct. at 2659.

The Court rejected the State's argument that the option of not attending graduation excused any element of coercion in the ceremony itself. The Court noted that, while the plaintiff could have opted not to attend her commencement exercises without renouncing her diploma, it is

apparent that a student is not free to absent herself from the graduation exercise in any real sense of the term "voluntary," for absence would require forfeiture of those intangible benefits which have motivated the student through youth and all her high school years. Graduation is a time for family and those closest to the student to celebrate success and express mutual wishes of gratitude and respect, all to the end of impressing upon the young

person the role that it is his or her right and duty to assume in the community and all of its diverse parts.

*Id.* —— U.S. at ——, 112 S.Ct. at 2659. More explicitly, the Court stated:

The Constitution forbids the State to exact religious conformity from a student as the price of attending her own high school graduation. This is the calculus the Constitution commands.

*Id.* —— U.S. at ——, 112 S.Ct. at 2660. At a high school graduation, the state-imposed character of the prayer by clergy selected by the school combined to make the prayer a "state-sanctioned religious exercise in which the student was left with no alternative but to submit." *Id.* However, the Court also noted that

at graduation time and throughout the course of the educational process, there will be instances when religious values, religious practices and religious persons will have some interaction with the public schools and their students.... But these matters, often questions of accommodation of religion, are not before us. The sole question presented is whether a religious exercise may be conducted at a graduation ceremony in circumstances where, as we have found, young graduates who object are induced to conform. No holding by this Court suggests that a school can persuade or compel a student to participate in a religious exercise. That is being done here, and it is forbidden by the Establishment Clause of the First Amendment.

*Id.* —— U.S. at ——, 112 S.Ct. at 2661 (citations omitted).

■ As *Lee v. Weisman* makes clear, many dynamics are at play in the constitutional analysis required for resolution of the issues now before this Court. The Supreme Court, implicitly if not expressly, acknowledges that special considerations apply in the public school setting, whether at graduation time or any other time during the year. School boards must avoid not foster or engage in activities which are something other than religious accommodation and must not endorse or sponsor religion in the public school. School boards are required to make

these decisions without injury to or diminution of the first amendment rights of others. This is, indeed, often a difficult task.

Upon a careful reading of *Lee v. Weisman,* and the caselaw following its lead, it is evident that the dangers to be avoided are state sponsorship and endorsements of activities which compel or coerce participation in a particular religious orthodoxy.[3] These dangers are greater in the context of a state sponsored and directed high school graduation ceremony than in the context of a privately sponsored baccalaureate ceremony. Justice Souter, in his concurring opinion in *Lee v. Weisman,* pointedly suggested a privately sponsored baccalaureate for students who desire to express their religious feelings at the time of their graduation. *Id.* —— U.S. at ——, 112 S.Ct. at 2677. A privately sponsored baccalaureate was also recognized as an option for religious minded students in *Jones v. Clear Creek Independent School Dist.,* 977 F.2d 963, 972 (5th Cir.1992), *reh. denied* 983 F.2d 234 (5th Cir.1992), *cert. denied* —— U.S. ——, 113 S.Ct. 2950, 124 L.Ed.2d 697 (1993).[4]

■ The State may not coerce participation by a graduating student in a ceremony invested with state-sponsored and state-directed religious elements. Here, the Board has asserted that the only means available to the Board for avoiding an Establishment Clause violation was to create an entirely new policy prohibiting the use of school facilities for any purpose which has or may have a religious purpose. The new policy appears to have been adopted with the express intention of precluding plaintiffs from renting the school facilities in this particular case. The Board's new policy, however, singled out the baccalaureate parent/student group in a discriminatory manner which significantly impacted the first amendment rights of group members. The Board asserts that its goal of avoiding an Establishment Clause violation provided the compelling reason which justified denying the baccalaureate group access to the use of the gymnasium, and for adopting its new policy providing for more selective access to school facilities.

Unquestionably, the Board has no obligation to adopt any policy at all permitting the use of school facilities by the public for anything other than usual educational purposes. *Lamb's Chapel v. Center Moriches Union Free School Dist.,* —— U.S. ——, 113 S.Ct. 2141, 124 L.Ed.2d 352 (1993). However, the Board did adopt a policy that provided generally for open access and use of the district's school facilities by the public, so long as those uses did not interfere with school activities. After the student and parent group had requested use of the Laramie High gymnasium for their baccalaureate, the Board's existing policy was changed to preclude the use of school facilities by groups with a religious purpose. The Board claims

---

**3.** The Fifth Circuit, in *Jones v. Clear Creek Independent School Dist.,* 977 F.2d 963, 972 (5th Cir.1992), *reh. denied* 983 F.2d 234 (5th Cir. 1992), *cert. denied* —— U.S. ——, 113 S.Ct. 2950, 124 L.Ed.2d 697 (1993), states that *Lee* identifies unconstitutional coercion as occurring when "(1) the government directs (2) a formal religious exercise (3) in such a way as to oblige the participation of objectors."

**4.** The *Jones* court found the age of the graduating seniors was an additional relevant consideration. In that case, the issue was whether students were free to choose whether any prayer would be included in their graduation programs. The Fifth Circuit determined that "a majority of students can do what the State acting on its own cannot do to incorporate prayer in public high school graduation ceremonies." 977 F.2d at 972. *See also Harris v. Joint School Dist. No. 241,* 821 F.Supp. 638 (D.Idaho 1993) (practice of allowing senior students to choose whether or not to have prayer at their public high school

graduation determined not to violate Establishment Clause). This is consistent with caselaw acknowledging that the State's authority to regulate activities of children decreases as the child's level of maturity increases. *See e.g., Planned Parenthood v. Danforth,* 428 U.S. 52, 74, 96 S.Ct. 2831, 2843, 49 L.Ed.2d 788 (1976), in which the Court states "Constitutional rights do not mature and come into being magically only when one attains the state-defined age of majority. Minors, as well as adults, are protected by the Constitution and possess constitutional rights. The Court indeed, however, long has recognized that the State has somewhat broader authority to regulate the activities of children than of adults." Graduation from high school is, in our society, one of the rites of passage from childhood into adulthood. Allowing students to participate in the decisions surrounding the commemoration of their graduation acknowledges increased levels of maturity for these young adults.

the change in the existing policy was intended to avoid endorsing religion or any particular creed. However, in so changing the policy, the Board violated the first amendment by denying the baccalaureate group access to facilities contrary to its previous policy of open and equal access to the school facilities by discriminating against a particular point of view.

The United States Supreme Court determined that a public school district rule barring use of school facilities by groups whose subject matter has a religious purpose or a religious viewpoint when all other groups are allowed such use violates the first amendment. " '[T]he First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others.' " *Lamb's Chapel v. Center Moriches Union Free School Dist.*, —— U.S. ——, ——, 113 S.Ct. 2141, 2147–2148, 124 L.Ed.2d 352 (1993) (quoting *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 804, 104 S.Ct. 2118, 2128, 80 L.Ed.2d 772 (1984)). The Supreme Court noted that the interest of the State in avoiding an Establishment Clause violation may be a compelling reason for justifying an abridgment of free speech otherwise protected by the First Amendment in certain circumstances. *Id.* at ——, 113 S.Ct. at 2148 (quoting *Widmar v. Vincent*, 454 U.S. 263, 271, 102 S.Ct. 269, 275, 70 L.Ed.2d 440 (1981)). But, where a school has an open access policy, the Court concluded that it is not necessarily incompatible with Establishment Clause caselaw to allow use of school facilities by groups for religious purposes. *Id.*

In *Lamb's Chapel v. Center Moriches Union Free School Dist.*, —— U.S. ——, 113 S.Ct. 2141, 124 L.Ed.2d 352 (1993), the Court upheld the use of school facilities by a group intending to present a religious oriented film series about family issues and child-rearing. The Court determined that fears of an Establishment Clause violation in the case were unfounded, where "showing of the film would not have been during school hours, would not have been sponsored by the school, and would have been open to the public, not just to church members." *Id.* at ——, 113 S.Ct.

at 2148. Where the district's policy had permitted use of school property by a wide variety of private organizations, and under the circumstances of that case, there was "no realistic danger that the community would think that the District was endorsing religion or any particular creed, and any benefit to religion or to the Church would have been no more than incidental." *Id.*

The *Lamb's Chapel* decision is consistent with the Supreme Court's decision in *Board of Educ. of Westside Comm. Schools v. Mergens*, 496 U.S. 226, 110 S.Ct. 2356, 110 L.Ed.2d 191 (1990), in which the Court upheld a school's policy of equal access to school facilities allowing an after-school student religious club to meet on school property. There, the Supreme Court prohibited discrimination against the students wishing to conduct their meeting within the school on the basis of religious, political, philosophical, or other content of speech at such meetings.

The principles of these Supreme Court precedents have been applied by federal district courts in cases very nearly identical to the case at bar. In *Verbena United Methodist Church v. Chilton County Bd. of Educ.*, 765 F.Supp. 704 (M.D.Ala.1991), the district court held that a church was entitled to a preliminary injunction requiring School Board to rent high school auditorium to private group sponsoring baccalaureate group. The district court, in *Randall v. Pegan*, 765 F.Supp. 793 (W.D.N.Y.1991), found that a high school's leasing of auditorium to a non-denominational student group for a baccalaureate service for graduating seniors did not violate the Establishment Clause.

In this case, the Board argued that it feared for an Establishment Clause violation, and that the circumstances were such that, if the baccalaureate ceremony were to be held at Laramie High gymnasium, it would appear the Board was endorsing or sponsoring religion. It does not appear to be in dispute that the Board could have disclaimed its association with the baccalaureate ceremony by doing something other than denying the baccalaureate group the right to rent the gymnasium on the same terms and conditions as all other groups renting the same gymnasium. Admittedly, there are indicia that might

have caused certain community members to believe the baccalaureate ceremony was being sponsored by the school rather than private individuals.

These indicia include obvious factors: a single written announcement was printed for the graduation and baccalaureate ceremonies, a letter from the school principal which referred to baccalaureate, participation of the school choir and orchestra in the baccalaureate ceremony, and the fact that parents of some graduating seniors who planned to participate in the baccalaureate ceremony were also school district employees. These factors suggest an "aura of affiliation" with the school. *See Verbena United Methodist Church v. Chilton County Bd. of Educ.*, 765 F.Supp. at 712–713. However, although the Board's dissociation from the baccalaureate ceremony could have been more unequivocal, the evidence also clearly demonstrated that baccalaureate was being sponsored by a private group of parents and students and that the event was not being sponsored by the school district itself.

The Board's able and vigorous defense to plaintiffs' complaint in this case aids in disseminating the message to the community that the Board is not endorsing or sponsoring religion by renting the Laramie High gymnasium to the plaintiffs for the purpose of holding a privately sponsored baccalaureate. This Court will issue a preliminary injunction preventing the Board from enforcing its revised policy refusing to rent school facilities to groups with a religious purpose, contrary to its original policy of open and equal access permitting the use of school facilities by the public. Thus, the Board's former policy of open and equal access will be given effect by this Court, requiring the Board to rent the school gymnasium to the baccalaureate group on the same terms and conditions permitting rental of school facilities to other groups. The Board's policy of open and equal access permitting the use of school district property by all community groups is subject to the restriction that the proposed use not interfere with school activities. When the Board changed its existing policy to exclude use of school facilities by groups with a religious purpose, the Board

engaged in unconstitutional conduct and abridged the baccalaureate group's first amendment rights in a manner not permitted by the law.

When first amendment freedoms are lost, even if for minimal periods of time, irreparable injury has occurred. *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976); *see also Randall v. Pegan*, 765 F.Supp. at 795 (quoting *Parents' Assoc. of P.S. 16 v. Quinones*, 803 F.2d 1235, 1242 (2d Cir.1986)). Based on the foregoing discussion of current Supreme Court cases regarding these first amendment issues, this Court concludes that it is substantially likely plaintiffs will prevail on the merits; plaintiffs have also raised serious questions which go to the merits. Nothing presented by the Board at the hearing suggested that any damage will be suffered by the Board if the preliminary injunction requested by plaintiffs issues. The Board argued that the harm it would suffer, should the preliminary injunction issue, was the possibility that it might violate the Establishment Clause. This argument is not persuasive. The circumstances of this case suggest that there is little realistic danger that the community will think the Board is endorsing religion or any particular creed if plaintiffs are permitted to rent, on the same terms and conditions as any other group, the Laramie High gymnasium as the location for holding its privately sponsored baccalaureate service which will be open to the public and held May 27, 1993.

Based on the foregoing and the Court being fully advised in the premises, it is hereby

**ORDERED** that plaintiff's motion for preliminary injunction should be, and is, **GRANTED**, and it is further

**ORDERED** that Albany County School District No. One Board of Education shall be, and is, enjoined from enforcing its revised policy precluding rental of school district property to groups which have a religious purpose, contrary to its prior policy of open and equal access permitting the use of school district properties by the public so long as

the proposed use does not interfere with school activities.